NICHOLS & SHEPARD COMPANY v. ANNA WIEDEMANN.

May 23, 1898.

Nos. 11,070—(91).

**Sale—Warranty—Divisibility—Finding Sustained.**
Evidence considered, and *held*, that it sustains the finding of the trial court to the effect that the defendant complied with the conditions of the warranty of a threshing outfit purchased of the plaintiff.

**Offer of Evidence—Materiality—Scofield v. Walrath, 35 Minn. 356, Followed.**
Rule in Scofield v. Walrath, 35 Minn. 356, and previous cases, that evidence offered must be made to appear material, followed and applied.

**Counterclaim—Relief Limited by Answer.**
The defendant gave her promissory notes and certain old machinery at the agreed price of $758 for the purchase price of new machinery. In her answer she claimed a rescission of the sale, and alleged the value of the old machinery to be $600, for which she asked judgment, and for a

cancellation of the notes.  *Held*, that her money recovery was limited to $600.

Appeal by plaintiff from an order of the district court for Clay county, Baxter, J., denying a motion for a new trial.  Affirmed on conditions.

*F. H. Peterson* and *A. C. Kingman*, for appellant.

*C. A. Nye*, for respondent.

START, C. J.

This action was brought to foreclose a chattel mortgage given by the defendant to the plaintiff upon a grain-threshing outfit, consisting of steam engine and separator with appliances and attachments, to secure the payment of three promissory notes given for a part of the purchase price of the machinery and amounting in the aggregate to $2,100.

The answer admitted the making of the notes and mortgage, and alleged that the defendant purchased the machinery from the plaintiff for the agreed price of $2,700, and in part payment she turned over to it a second-hand threshing outfit at the agreed price of $600, its reasonable value, and gave the mortgage and notes for the balance thereof; that the machinery was warranted; that there was a breach thereof; and that she returned the machinery to the plaintiff at the place she received it, pursuant to the conditions of the warranty.  The answer also contained allegations as to her damages by reason of the warranty, and prayed judgment that the notes and mortgage be delivered to the defendant, and that she recover the sum of $600 paid on the purchase of the machinery; also special damages in the sum of $2,000.

The findings of the trial court included the findings of the jury on special issues, and, so far as here material, were to the effect that there was a breach of the warranty, a rescission of the sale upon the defendant's part, and return of the machinery to the plaintiff; and its conclusions of law were that the plaintiff was not entitled to recover, but that the defendant was entitled to judgment against it for $758 paid on the purchase price, with interest.  The plaintiff appeals from an order denying its motion for a new trial.

1. The plaintiff's important assignments of error may be con-

sidered together. They involve the question whether the evidence sustains the finding of the trial court to the effect that the defendant complied with all the conditions of the warranty.

The contract of warranty was in writing, and contained, among others, the conditions following: If within five days after the first use of the machinery it fails to fill the warranty, written notice by registered letter shall be immediately given to the seller at Battle Creek, Michigan, and also to the local dealer, stating wherein the machinery fails to fill the warranty. In case the workman sent to fix the machinery does not leave it working satisfactorily, the purchaser shall give a second notice as before. If any part of the machinery cannot be made to fill the warranty, that part shall be returned immediately to the place where it was received, with the option of the seller to furnish other machinery or part in place of that returned, or return the money and notes received by the seller for the same, and to be released from any further liability. Failure to give any of the notices, or failure on the part of the purchaser to render friendly assistance in making the machinery work, or the keeping it after the five days allowed as provided above, shall be a waiver of the warranty, and a full release of the warrantor.

"No general or special agent or local dealer is authorized to make any change in this warranty. Workmen or experts are not agents, and have no authority to bind the company by any contract or statement. * * * This order is subject to the acceptance of the said company, and when so accepted is a binding contract, which no person has authority to modify, or to waive any of its conditions."

These conditions must be construed strictly against the seller, as they are intended to limit and minimize the force of the warranty. The plaintiff is a corporation, and can act only by agents; hence the provision that no person has authority to waive any of the conditions of the contract is not a limitation upon any particular agent or class of agents, but one upon the capacity of the corporation for future action, which it cannot impose upon itself; hence this particular provision cannot operate to prevent a waiver by the corporation of the conditions of the contract which would,

except for the prohibition, legally result from the acts of its authorized agents in reference to the machinery. Lamberton v. Connecticut F. Ins. Co., 39 Minn. 129, 39 N. W. 76.

The defendant failed to give notice to the plaintiff at Battle Creek within five days after she commenced using the machinery, but she claims that such notice was waived by the conduct of the plaintiff. The defendant's evidence tended to show that the defendant commenced using the machinery August 23, 1895, and continued its use until September 18, or about 23 days, and that it failed to comply with the warranty in substantial particulars from the first, and was practically a failure as a threshing outfit; that the plaintiff's expert was present when the machinery was started, and that it did not work well; that plaintiff's local agent was notified the next day, and afterwards its general agent at Minneapolis, but no notice was sent to the plaintiff at Battle Creek until September 18; that during the time defendant was using the machinery some one agent, expert, or officer of the plaintiff was at the defendant's farm nearly every day, trying to make the machinery work as warranted, but failed so to do; among others the plaintiff's agent whose special line of work was looking after its machines in the field, its traveling agent, and its foremen of its separator and engine construction departments, respectively, from Battle Creek. Much of the defendant's testimony is contradicted by that of the plaintiff, which tended to show that the machinery was as warranted, and that the several agents, except those sent by the local agent, who were at defendant's farm while the machinery was being used, were there casually, and not in response to any notice of defects in the machinery. Upon the whole evidence we are satisfied that it was sufficient to sustain the finding that the plaintiff waived the sending of formal written notice to it at Battle Creek within the five days. Massachusetts L. & T. Co. v. Welch, 47 Minn. 183, 49 N. W. 740.

The plaintiff further claims that the defendant did not comply with the conditions of the warranty, because she did not return the machinery at the place where she received it.

The written contract provided that the machinery should be shipped for the defendant, in care of plaintiff's local agents at

Moorhead, and that the defendant should receive it on its arrival, subject to the conditions of the warranty. The defendant, when she found the machinery would not work, hauled it to her farm buildings, some seven miles from Moorhead, which, as she claimed, was the place at which she received it. There was evidence on the part of the defendant tending to show that it was agreed between her and the local agent that the machinery should be delivered to her at her farm, as she had no means of unloading it, and could not undertake to do it, and that the machinery was accordingly there delivered by the agent, of the plaintiff; that the defendant notified the plaintiff of the fact of the failure of the machinery to fill the warranty, and also that it was at the place of delivery for the plaintiff; and, further, that after such notice, and about October 1, 1895, the plaintiff's secretary was at the defendant's farm, where the machinery then was, saw it there, and was informed by the defendant's husband and agent that it had broken down, and that he could not run it, and thereupon the secretary went away. There is no evidence that he objected to the machinery being left where it was, or offered to furnish other machinery in place of it. It remained where the secretary saw it until the plaintiff took possession of it on its mortgage. While the evidence as to some of these matters was conflicting, yet it was sufficient to sustain a finding that the defendant had substantially complied with the contract as to returning the machinery in case it could not be made to work.

It is also claimed by the plaintiff that the defendant did not perform the condition of the warranty as to rendering friendly assistance in the work of making the machinery operate. This, upon the evidence, was clearly a question of fact. Upon the whole evidence we are of the opinion that the evidence is sufficient to sustain the finding of the trial court that the defendant complied with the conditions of the warranty.

2. On the trial one of the plaintiff's experts, who was a witness on its behalf, testified, without objection, that the defendant's servant in charge of the separator was not a competent person to

run it. Thereupon questions were asked and rulings made as follows:

"Q. Did you have any talk with Mr. Wiedemann's foreman about the separator man? A. Yes, sir. Q. What did you tell the foreman? (Objected to as incompetent, irrelevant, and immaterial. Objection sustained. Exception.) Q. What did you say to the foreman, on the night of the day you started the engine, with reference to the competency of the man who was to take charge of the separator? (Objected to as incompetent, irrelevant, and immaterial. Objection sustained. Exception.) Q. What did the separator man who had been furnished by Mr. Wiedemann to take charge of the separator say to you with reference to his knowledge of separators and of this particular separator? (Objected to as above. Objection sustained. Exception.)"

These rulings are assigned as error. They were correct. The simple fact that the expert had a talk with the foreman about the separator man and his competency, or what the latter said to the expert on the subject, was prima facie immaterial. There was no evidence before the court at this time tending to show that the failure of the machinery to work was due to any improper management of it by the separator man. It did not appear from the questions that the answers would be material, and counsel made no statement or offer showing the materiality of the evidence sought to be elicited. Austin v. Robertson, 25 Minn. 431; Scofield v. Walrath, 35 Minn. 356, 28 N. W. 926.

3. The defendant, as a part of the purchase price of the machinery, delivered to the plaintiff certain second-hand machinery, which it was agreed should be received in payment for the new machinery at the sum of $758. On the trial the plaintiff offered to show the actual value of this old machinery, which was objected to by the defendant on the ground that the value was fixed by the contract, and the court sustained the objection. This ruling is assigned as error, but, as the record shows no exception thereto, it cannot be here reviewed.

The court found that the defendant did pay $758 on the purchase price of the machinery by delivering to plaintiff the old machinery, and finds as a conclusion of law that the defendant is entitled to recover $758 and interest. This is also assigned as error.

The defendant, upon the rescission of the contract, was entitled to receive back the old machinery, or, if it was not returned to her, to recover its reasonable value. The contract price for the old machinery was only prima facie evidence of its reasonable value. The answer alleged this reasonable value to be only $600, which sum the defendant claimed to recover of the plaintiff in lieu of the old machinery. There was, then, no issue in the case that the old machinery was worth any more than $600. It is clear that the trial court erred in its conclusion of law that the defendant was entitled to $758, or any greater sum than $600 and interest. This is not a case of variance, as claimed by defendant, or the granting of greater relief than prayed for, which was consistent with the case made by the pleading, under the provisions of G. S. 1894, § 5413. It was the granting of relief beyond and outside of the case made by the answer. The defendant, having alleged that the value of the old machinery was only $600, could not recover a greater sum therefor without amending her answer.

It is therefore ordered that a new trial herein be granted unless within 15 days after a remittitur is filed in the district court the defendant files her written consent that the findings of fact and conclusions of law of the trial court may be amended so as to reduce her money recovery to $600, in which case the order appealed from is affirmed, and the judgment may be entered on the findings as so modified.

A motion for a reargument having been made, on June 7, 1898, an order was filed granting a reargument on briefs "upon the question raised" in appellant's original brief as to the divisibility of the contract for the sale of the threshing outfit.

On July 15, 1898, the following opinion was filed:

START, C. J.

A motion was granted for a reargument on the question whether the contract of sale and warranty of the threshing outfit here in controversy was divisible, and the defendant's right to rescind limited to such separate parts of the outfit as failed to comply with the warranty.

Our first impressions were that the contract was indivisible, because the machinery, constituting the subject-matter of the contract, consisted of but one entire threshing outfit, the whole thereof being absolutely essential for the purpose for which it was purchased at a gross price. Neither the engine nor the separator could be operated without the attachments belonging to them, respectively, and it seemed to be unreasonable and unjust to hold that, if the engine and separator failed to comply with the warranty, the defendant might rescind as to them, but must keep and pay for the (to her) worthless attachments. But a more careful examination of the contract satisfies us that the parties thereto expressly stipulated that it should be divisible. It was competent for them to so contract. The outfit consisted, as stated in the contract, of an engine, separator, stacker, feeder, water tank, pump, hose, and elevator, and the contract contained these stipulations:

"If any part of the machinery cannot be made to fill the warranty, that part which fails shall be returned, * * * with the option of the company either to furnish another machine or part in place of the machine or part so returned, * * * and thereby rescind the contract to that extent, or in whole, as the case may be, and be released from any further liability herein. The failure of any separate machine or any part thereof shall not affect the contract or liability of the purchaser for any other separate machine, or for any parts of such machine as are not defective."

Effect cannot be given to these express terms of the contract, except by holding, as we do, that the contract was divisible, and that the defendant's right of rescission was limited to that portion of the machinery which failed to comply with the warranty. See Aultman v. Lawson, 100 Iowa, 569, 69 N. W. 865. There is no evidence in the case that the stacker, water tank, pump, hose, and elevator did not comply with the warranty. The plaintiff was therefore entitled to recover the contract price as to these articles. This amount can be readily ascertained from the evidence by computation. The total contract price of the outfit was $2,700. The evidence shows that the prices of each separate part of the whole outfit aggregate $2,850, and that the separate prices of the engine, separator, and feeder, the parts which did not comply with the

warranty, aggregate $2,470. The aggregate pro rata contract price of the engine, separator, and feeder would be $2,340, which, deducted from the total contract price, $2,700, leaves $360, the contract price for the portion of the machinery the defendant must pay for. Therefore it is ordered that the order heretofore made herein be, and it is hereby, modified so as to read as follows:

Ordered that a new trial be granted, unless within 15 days after the remittitur is filed in the district court the defendant files her written consent that the findings of fact and conclusions of law of the trial court may be amended so as to reduce her money recovery to $240, in which case the order appealed from stands affirmed, and judgment may be entered on the findings so modified.