NICHOLS & SHEPARD COMPANY, Appellant, vs. CHASE and another, Respondents.

*June 5 — July 3, 1899.*

*Entire contract: Sale of machines: Breach of warranty as to one: Appeal: Exceptions.*

1. A written contract for the purchase of a separator, stacker, and bagger warranted the machines as to quality and capability, and provided that the stacker and bagger, when ordered, should be furnished as extra attachments at stipulated prices.  It also provided that if, after trial and opportunity given the manufacturer to remedy defects, the purchaser rendering friendly assistance and cooperation, any part of the machinery could not be made to fill the warranty, such part should be immediately returned to the place where it was received and the vendor have the option either to furnish a new machine or part of a machine or to rescind the contract to that extent, or as a whole, as the case might be, and that the failure of any separate machine, or any part thereof, should not affect the contract or liability of the purchaser for any other separate machine, or for any parts of such machines as should not be defective.  The same provisions were made for remedying defects in the stacker and bagger as were provided in case the separator was found defective.  *Held,* that the contract was for the purchase of three separate machines.
2. In an action on a note given in payment for such machines, to which the purchaser counterclaimed for breach of warranty as to the separator, the error of the trial court in submitting the case to the jury

Nichols & Shepard Co. vs. Chase and another.

for special verdict on the theory that the contract of purchase was for one entire and inseparable machine, is *held* to be before the supreme court for review on appeal, although there was only a general exception to the entire charge and every part thereof, where, after defendant had proved that when the contract was made the defendant and plaintiff's general agent thoroughly talked over the prices of each of the separate articles, the court excluded testimony tending to show that each machine was put into the order at a separate and stipulated price and as to what that price was; and also refused to submit in the special verdict questions as to whether the stacker and bagger, respectively, failed to fill the warranty, and whether the defendant had complied with the contract with respect to the return of any part found by the jury to be defective; and also denied a motion to set aside the verdict and grant a new trial,— to each of which rulings the plaintiff excepted.

3. A clause written into the contract to the effect that if the separator did not do first class work, as talked, it was to be taken back at any time in 1895, did not modify the contract as to the stacker and bagger, nor deprive the plaintiff of the benefit of provisions with respect to remedying defects, etc.

APPEAL from a judgment of the superior court of Milwaukee county: GEO. E. SUTHERLAND, Judge. *Reversed.*

On May 21, 1895, the defendant *Chase* (a farmer in Fond du Lac county) signed a written order upon the plaintiff (a corporation engaged in the manufacture of agricultural implements at Battle Creek, Michigan) to the effect that the plaintiff should ship for him, to or in the care of J. M. Harmer, at Fond du Lac, on or about July 15, 1895, one of its improved No. 6 belt separators, therein described, and one eighteen-foot straw stacker, complete, therein described, and one automatic bagger, therein described; and *Chase* therein agreed to receive such machinery on its arrival, subject to all the conditions of the warranty and agreement therein contained, and pay in cash the freight and charges thereon from the factory, and also to pay to the plaintiff by note due December 1, 1895, $225, note due December 1, 1896, $225, note due December 1, 1897, $206.25 (such notes to be made payable to the order of the plaintiff), each bearing in-

terest at six per cent. from August 1, 1895, and to give in security of such notes a first mortgage on such machinery.

Such machinery was purchased and sold subject to the express warranty and agreement, and no other, that the machinery was well made, of good material, and with proper management capable of doing well the work for which the machines, respectively, were made and sold, conditioned that if, within five days from its first use, it should fail to fill such warranty, written notice should be immediately given by the purchaser to the plaintiff by registered letter (and written notice, also, to the local dealer named), stating particularly what place and wherein it had failed to fill the warranty; that reasonable time should be allowed to the plaintiff to get to the machine with its workmen and remedy the defect, if any, unless it should be of such a nature that a remedy might be suggested by letter; that the purchaser should render friendly assistance and co-operation in making the machinery a practical success; that if a workman visited the machine for the plaintiff, and did not leave it working satisfactorily, the purchaser should give immediate notice to the plaintiff by registered letter, and to the local dealer, as before, and state in writing, specifically, any failure or neglect complained of, and allow time for another workman to be sent to examine the machine and its working; that, if any part of the machinery could not be made to fill the warranty, that part which failed should be returned immediately by the purchaser to the place where it was received, with the option of the plaintiff either to furnish another machine or part in place of the machine or part so returned, which should perform the work, or return the money and notes which had been received by the plaintiff for the same, and thereby rescind the contract to that extent, or in whole, as the case might be, and be released from any further liability thereon; that the failure of any separate machine, or any part thereof, should not affect the contract or liability

of the purchaser for any other separate machine, or for any parts of such machine as were not defective; that if any part of such machinery (except belting) should fail during the first season in consequence of any defect in material of such part, the plaintiff should have the option to repair the same or to furnish a duplicate of such part free of charges, except freight, after presentation of the defective piece, clearly showing a flaw in the material, at the factory or to the local dealer; that independent stackers and baggers, when ordered, should be furnished as extra attachments, at stipulated separate prices, and subject to this warranty and its conditions; that if any such attachment should fail to fulfill the warranty, and the plaintiff should fail to make it perform after having notice and friendly assistance and co-operation as provided, such attachment might be returned immediately to the place where received, and credit should be allowed the purchaser for the price he paid for the same, and all liability of the plaintiff thereon should thereby be terminated, but such failure and return of any of such attachments should not affect the contract for any of the other machinery, or the liability of the purchaser therefor; that failure to pay for the machinery at the time and place of delivery and in the manner provided, or failure to give any of the notices in writing as provided, or failure to render friendly assistance and co-operation, or keeping the machinery after five days allowed as provided, or any abuse, misuse, unnecessary exposure, or waste committed or suffered by the purchaser should be a waiver of the warranty, and a full release of the warranter, without in any way affecting the liability of the purchaser for the price of the machinery or notes given therefor; that no general or special agent or local dealer was authorized to make any change in such warranty; that workmen or experts were not agents, and would have no authority to bind the company by any contract or statement; that any modification in the price, terms

of payment, or securities, or substitution of one style or size of machine for another, would not in any way affect the warranty and its conditions; that if such separator did not do first-class work in every respect, as talked, such separator was to be taken back at any time in 1895; that ten per cent. was to be allowed on all moneys paid on or before December 1, 1895; that, in case of a failure of a crop, such order was to be subject to countermand up to July 15, 1895; that such order was subject to the acceptance of the plaintiff, and when so accepted was to be a binding contract which no person had authority to modify, or to waive any of its conditions; that it was expressly agreed that the plaintiff should be liable for the return only of cash and notes payable to its order actually received by it.

Below the signature of the defendant *Chase* there were certain directions as to filling out and signing property statement and the order, and sending to the plaintiff, and retaining a copy, and by whom the order was recommended. The plaintiff accepted such order, and delivered such machinery to the defendant on or about July 22, 1895, and the defendant *Chase* at the same time executed and delivered to the plaintiff the three promissory notes mentioned, the payment of each of which was guaranteed by the defendant *Hickman*.

On August 27, 1896, the plaintiff commenced this action upon the note falling due December 1, 1895, to recover the amount thereof ($225), with interest thereon from August 1, 1895. The defendant *Chase* answered the complaint on that note by way of admissions, denials, and counter allegations, and further, by way of defense and counterclaim, alleged, in effect, that Harmer & Hickman were agents of the plaintiff in the sale of the machine; that through them he (*Chase*) purchased the separator of the plaintiff for $656.25; that it was delivered, and the three notes executed therefor, as stated; that the separator was absolutely and utterly worth-

less; that it was poorly constructed, many parts of it being of worthless material; that it utterly failed to do the work it was guaranteed to do, and in no manner complied with the warranties; that it was not capable of doing the work it was warranted to do and perform, or any work whatever; that the defendant fully performed all the conditions of the contract on his part; that he duly notified the plaintiff of the failure of the separator to work as guaranteed, and afterwards tendered the same to the plaintiff, and returned the separator to the residence of Harmer, the local agent of the plaintiff, where it has ever since remained, subject to the control of the plaintiff; that by reason of such failure and such faulty construction and worthless character of the separator, and its return, and the conditions. and terms of the contract, the defendant had been damaged in the sum of $656.25, with interest thereon from August 1, 1895, and he demanded judgment against the plaintiff for that amount. The plaintiff replied to such counterclaim by way of admissions, denials, and counter allegations.

Thereupon the cause was tried, and at the close of the trial the jury returned a special verdict to the effect (1) that the plaintiff, as an inducement to the purchase of the threshing machine by the defendant, represented to him that the machine would be a first-class machine in every respect, (2) and do as good work as any machine that is made, (3) and the defendant purchased the machine relying upon such representations as being true; (4) that the machine so delivered to the defendant was not a first-class machine in every respect, (5) and with proper management would not do as good work as any machine that is made; (6) that the defendant did, in good faith, give the machine a fair and reasonable trial, to test its ability to do good work, (7) and on such trial it did not do as good work as any machine that is made, (8) nor first-class in every respect; (9) that the plaintiff did have a reasonable opportunity to remedy any defect in the working of the machine, and put it in good

running order; (10) that, under all the facts and circumstances disclosed by the evidence in this case, the defendant, after the trial of the machine at Mr. Stroup's, was justified in rescinding the contract and tendering the machine back to the plaintiff; (11) that the amount due upon the note sued upon in this action was $258.78; (12) that the amount due upon the three notes given by the defendant to the plaintiff was $754.95.

A motion was thereupon made by the plaintiff to set aside the verdict and for a new trial, and the same was denied April 16, 1898. Thereupon, and on the same day, judgment was entered against the plaintiff and in favor of the defendant *Chase* to the effect that he have and recover of and from the plaintiff $754.95 damages and costs, amounting in the aggregate to $892.05; that upon the surrender and delivery of the three notes mentioned, to the clerk of the court, within ninety days from the date of such judgment, then and thereupon such judgment should be and become wholly set aside and discharged, and the clerk should then and thereupon discharge the same of record, and satisfy the same upon the docket. From that judgment the plaintiff brings this appeal.

*Orren T. Williams*, attorney, and *A. C. Kingman*, of counsel, for the appellant.

*Maurice McKenna*, for the respondent *Chase*.

CASSODAY, C. J. There is evidence tending to show that, before signing the order for the machines, *Mr. Chase* called on *Mr. Hickman*, the plaintiff's state agent, located at Milwaukee, and examined a sample machine like those ordered; that on the afternoon of Friday, August 2, 1895, at the farm of *Mr. Chase*, the machines in question were first tested; that such test was continued the next day (Saturday, August 3, 1895); that during that time they threshed 1,300 bushels of grain (oats, barley, and wheat and oats mixed) and some peas; that such test was in the presence of the

plaintiff's local agent, Harmer; that when they first started up the mill bothered a little — the fanning mill did not do very good work,— but it was fixed, and soon got so it worked pretty fair; that on Saturday the separator would not work right, would not separate the grain from the straw as it should — wasted grain; that on Monday, August 5, 1895, it rained very hard, and no attempt was made to do any threshing; that on Tuesday, August 6, 1895, they finished threshing at *Mr. Chase's* farm, and the machines were then taken to the farm of Mr. Stroup, about a half a mile distant, and were there further tested in the presence of Harmer and an expert of the plaintiff, and they finally quit work at Stroup's on Wednesday, August 7, 1895, and, after the plaintiff's agent had paid Stroup $2 for loss of time, after that no more tests were made of the machines.

On the part of *Mr. Chase*, there is evidence tending to prove that, although the stacker and automatic bagger worked satisfactorily, yet the separator failed to fulfill the warranty, and that the plaintiff's local agent and its expert who witnessed such tests so admitted. On the contrary, there is testimony on the part of the plaintiff tending to prove that the grain was in bad condition to be threshed; that the machine was fed too fast by *Mr. Chase's* servants (that is to say, they threshed oats at the rate of seven and one-half bushels per minute, whereas four bushels per minute is very good threshing when grain is in good condition); and that *Mr. Chase* refused to render friendly assistance and co-operation in making the separator a practical success.

On the same day of that final test (Wednesday, August 7, 1895) *Mr. Chase* wrote the plaintiff as follows:

"Ladoga, Wis., Aug. 7th, 1895.

"NICHOLS & SHEPARD CO.:

"Dear Sir — I got one of your new separators this season. We cannot make it clean or separate. I will try it again to-day. If you want a trial, send a man at once. I live ten

miles west of Fond du Lac, on the Fond du Lac and Brandon road. Your nearest station is Fond du Lac. Your local agent, Harmer, is here, and a man from Milwaukee is here. They do not seem to understand the machine.

, " Yours truly,

" A. L. CHASE."

That letter was received by the plaintiff August 8, 1895. On the next day (August 9, 1895) the plaintiff's local agent, Mr. Harmer, sent a letter by a messenger to *Mr. Chase*, to the effect that he had just received a telegram from the plaintiff's state agent, *Mr. Hickman*, saying that he would be there that afternoon, and would insist on having an opportunity to make the separator work; that, if he had any word for him, to send it by the bearer; that *Mr. Chase* replied that he would see *Mr. Hickman* when he came, and have a settlement with him.

There is further evidence on the part of the plaintiff tending to prove that on that same day (Friday, August 9, 1895) *Mr. Hickman* visited *Mr. Chase*, with the plaintiff's manufacturer and expert in threshing machines from the home office, for the purpose of making the separator work as warranted, but that *Mr. Chase*, while admitting that the stacker and bagger worked satisfactorily, absolutely refused to give any such opportunity, and demanded a return of the notes he had given; that on the next day (Saturday, August 10, 1895) *Mr. Chase* took to his farm another machine, known as the Huber separator, which he had previously purchased; that on that same day *Mr. Chase* wrote the plaintiff this letter:

" Fond du Lac, Wis., Aug. 10, 1895.

" NICHOLS & SHEPARD:

" Gentlemen — Having had your separator on trial, and it not having worked according to contract, your agents not being able to make it work after a fair trial, I hold it subject to your order. Please send notes and contract, and avoid further trouble.    A. L. CHASE."

The evidence further showed that August 16, 1895, *Mr.* *Chase* again wrote the plaintiff that he held the separator and stacker subject to its order, and demanded the notes he had given therefor; that September 9, 1895, *Mr. Chase* again wrote the plaintiff to the same effect, and further that the machines were in his way, and that he wanted them removed at once; that, after the machines were so tested at Stroup's, *Mr. Chase* took them to his place, and kept them there until the latter part of October, 1895, when he removed the separator, stacker, and bagger, and all the machinery so purchased, to the place of the plaintiff's local agent, Mr. Harmer, while in his absence, and left them there, without any permission from Mr. Harmer, or his wife, or any one.

By accepting the order of *Mr. Chase* for the machines, and shipping and delivering them to him, on or about July 20, 1895, the contract of purchase, and all the provisions thereof, whether written or printed, became binding upon both parties. The several questions submitted to the jury, and the charge of the trial court thereon, are all on the theory that the contract of purchase is for one entire and inseparable machine, whereas the contract is for the purchase of three separate machines,— a separator, a straw stacker, and an automatic bagger. Moreover, the contract specifically provided, in effect, that, if any part of the machinery could not be made to fill the warranty, such part was to be immediately returned to the place where it was received, and the plaintiff was to have the option either to furnish another machine or part of a machine in place of the one that failed, or to rescind the contract to that extent, and that the failure of any separate machine, or any part thereof, should not affect the contract or liability of the purchaser for any other separate machine, or for any parts of such machine as should not be defective. It is true, there was a clause written in the contract by *Hickman*, at the request of *Mr. Chase*, to the effect if the separator did not do first-class

work in every respect, as talked, then the separator was to be taken back at any time in 1895, but that in no way modified the contract as to the stacker and bagger. Such radical disregard of the express terms of the contract by the trial court necessarily calls for a reversal of the judgment, unless the errors have been waived by the failure to take the necessary and timely exceptions.

The general exception to the whole charge and every part thereof is insufficient, and is without significance, under the repeated rulings of this court. But after the plaintiff had proved, by way of defense to the counterclaim, that, just before and at the time *Mr. Chase* signed the order for the machines, he and *Mr. Hickman* thoroughly talked over the prices of each of the separate articles mentioned therein (that is to say, the price of the separator, the price of the stacker, and the price of the automatic bagger), the court excluded testimony tending to prove that each of those machines was put in the order at a separate and stipulated price, and as to what such price was. The court also refused to submit to the jury the question whether the stacker failed to fill the warranty, and also whether the automatic bagger failed to fill the warranty, and also whether, in case they found that any of the machinery could not be made to fill the warranty, such part was immediately returned by *Mr. Chase* to the place where he received it, and also whether *Mr. Chase* gave to the plaintiff the option either to furnish another machine or part of a machine in place of the one that failed, or to rescind the contract to that extent. Exceptions to such rulings and the refusal of the court to set aside the verdict and grant a new trial are sufficient, in our judgment, to authorize us to correct an error running through the whole trial, so radical and decisive as the one mentioned. Upon the undisputed evidence, the plaintiff was entitled to recover the purchase price of the stacker and the automatic bagger.

Assuming that the separator failed to fulfill the warranty,

and that such failure was admitted by the plaintiff's local agent as early as Wednesday, August 7, 1895, or even the day before, still, by the terms of the contract, *Mr. Chase* was bound to give the plaintiff written notice at Battle Creek, Michigan, by registered letter, as well as its local agent, stating particularly what parts and wherein it so failed. No such notice was sent to the plaintiff until Wednesday, August 7th, and the same was received by the plaintiff the next day; and on Friday, August 9, 1895, *Mr. Hickman* appeared with such home expert, with the avowed purpose of making the separator work, but no opportunity was given so that they could make the attempt. And yet the contract expressly required that the plaintiff should have reasonable time to get to the machine, with its workmen, from Battle Creek, Michigan, and remedy the defect, and that *Mr. Chase* should render to the plaintiff friendly assistance and co-operation in making the separator a practical success. And yet it is manifest from the evidence that no time nor opportunity was given to the expert from Battle Creek to make the machine work. The contract goes still further, and provides that, if the first workman from Battle Creek should not leave the machine working satisfactorily, *Mr. Chase* should give a second notice, similar to the first, and allow another workman to be sent for that purpose. The question whether such notices were given was not submitted to the jury, and there is no pretense that any such second notice was given at all. Manifestly, the plaintiff, contrary to the express terms of the contract, was deprived of an opportunity of trying to make the separator work as agreed, and was, moreover, in case the separator was defective, deprived of its option to furnish another in its place, or to rescind the contract to that extent.

The clause written into the contract, as mentioned, to the effect that if the separator did not do first-class work in every respect, as talked, it should be taken back at any time

in 1895, did not deprive the plaintiff of the other provisions of the contract, giving it such opportunity to make it do first-class work, or to replace it with another separator. The terms of the contract may be severe upon *Mr. Chase*, but they were deliberately entered into by him and the plaintiff, and courts are powerless to make contracts for parties. The case is unlike *Kingman & Co. v. Watson*, 97 Wis. 596.

*By the Court.*— The judgment of the superior court of Milwaukee county is reversed, and the cause is remanded for a new trial.