NICHOLS & SHEPARD *vs.* GEORGE CHARLEBOIS, *et al.*

Opinion filed Nov. 7, 1901.

### Notice to Produce—Secondary Evidence.

When the pleadings disclose that the contents of a document in the possession of the adverse party will necessarily have to be proven in order to establish a link in the proof of the other party's cause of action or defense, a notice to produce such document at the trial is not necessary, in order to permit the introduction of secondary evidence of its contents.

### Warranty—Notice of Breach of Warranty.

A warranty given on the sale of machinery required the purchaser, in case the machinery failed to conform to the warranty, to give written notice to the vendor and its agent, stating particularly what parts and wherein it fails to fill the warranty. The notice in this case stated that the separator failed to clean the grain without wasting the same. This was the only defect complained of. *Held,* that the notice was sufficient.

### Vendees Sufficiently Complied with Contract.

The warranty required the vendees, in case of defects in the machinery, to give the vendor a reasonable time to get to the machine and remedy the same. *Held,* that the evidence shows that the vendees complied with the conditions of the warranty in this respect.

### Sale of Threshing Outfit an Entire Contract.

A contract for the sale of a threshing rig, consisting of an engine, separator, weigher, self-feeder, and other articles constituting a complete threshing outfit, for one lump sum, without fixing a price on each separate article, *held* an entire contract.

### Pleading—Amendment on Trial.

Defendants attempted to amend their answer at the trial so as to recover for certain freight paid by them on said threshing rig, or to recover back a note given by them to plaintiff's agent for the amount of the freight advanced by him. *Held* such attempted amendment unavailing, and the evidence offered thereunder insufficient to warrant a recovery therefor.

Appeal from District Court, Rolette County; *Morgan,* J.

Action by Nichols & Shepard Company against George Charlebois and others. Judgment for defendants, and plaintiff appeals. Modified.

*John Burke* and *Turner & Lee,* for appellant.

*P. J. McClory,* for respondents.

FISK, D. J. This is an action commenced in the district court of Rolette county, for the purpose of foreclosing two certain mortgages executed and delivered by the defendants, George Charlebois and Bolevard Brunut, to the plaintiff to secure the payment of three certain promissory notes, for $940 each, representing the purchase price of a certain threshing rig purchased by said defendants from

the plaintiff in September, 1899, consisting of an engine, separator, weigher, self-feeder, driving belt and water tank. The complaint is in the usual form. The answer admits the execution and delivery of the notes and mortgages, and by way of defense alleges, in substance, that said machinery was purchased by them under an express warranty that the same was well made, of good material, and that it was capable of doing well the work for which the same was made and sold, and that if it did not comply with such warranty it might, under certain conditions, be returned by them to the place where it was received, and the defendants would in such event be released from all liability on account of the purchase price thereof. They further allege that said machinery failed to comply with the terms of the warranty, and that they returned the same to plaintiff, and they allege full compliance on their part with the terms of the contract of warranty. The trial court found in favor of the defendants upon all of the issues, and judgment was rendered directing the cancellation of said notes and mortgages, and for the costs and disbursements of the action. From this judgment the plaintiff has appealed to this court, and asks a trial de novo of the entire issues.

The following are conceded facts in the case:

On July 22, 1899, the defendants, Bolevard Brunut and George Charlebois, signed an order for this machinery, the material provisions of which are as follows:

"Rolla, N. D., July 22nd, 1899.   Nichols & Shepard Company, Battle Creek, Mich.: You will please ship for the undersigned, to or in care of James O'Laughlin, at Rolla, N. D., by the route you consider best and cheapest, on or about the 1st day of August, 1899, with the fixtures and extras as you usually furnish them: 1 22-horse simple S. B. traction engine; 1 Perfection weigher, Dak. style; 1 belted separator, with 41-inch cylinder, 64-inch rear, and 18-foot stacker; 1 Nichols & Shepard self-feeder; 1 rubber drive belt, 150 feet long, 8 inches wide; 1 water tank, with trucks. The undersigned agree to receive such machinery on its arrival subject to all the conditions and agreements printed below, and pay in cash the freight and charges thereon from the factory, and also agree to pay to your order, at the time and place of delivery, the further sum in cash and notes, as follows: [Here follows a description of the three $940 notes.]

"Warranty.  This machinery is purchased and sold subject to the following express warranty, viz.: That said machinery is well made, of good materials, and, with proper management, capable of doing well the work for which the machines, respectively, are made and sold; conditioned that if, within five days from its first use, it shall fail to fill this warranty, written notice shall be immediately given by the purchaser to Nichols & Shepard Company, at Battle Creek, Mich., by registered letter, and written notice also to the local dealer, through whom the same was received, stating particularly what parts and wherein it fails to fill the warranty.

Reasonable time shall be allowed the company to get to the machine, with its workmen, and remedy the defect, if any there be, the purchaser to render friendly assistance and co-operation. * * * If, after giving the notices above provided, any part of the machinery cannot be made to fill the warranty, that part which fails shall be returned immediately, to place where it was received with the option of the company either to furnish another machine or part in place of the machine or part so returned, which shall perform the work or return the money or notes which have been received by the company for the same, and thereby rescind the contract to that extent, or the whole, as the case may be, and be released from any further liability herein. The failure of any separate machine or any part thereof shall not affect the contract or liability of the purchaser for any other separate machine, or for any parts of such machine as are not defective. It is expressly agreed that said company shall be liable only for the return of cash and notes payable to ·its order actually received by it, and not for any machinery or other property taken herein as part payment. * * * Independent stackers, automatic weighers, baggers, wagon loaders, and self-feeders, when ordered, are furnished as extra attachments, at stipulated separate prices, and subject to this warranty and its provisions. * * * If any such attachment fails to fill the warranty, * * * such attachment may be returned to the place where received; * * * but such failure and return of any such attachment shall not affect the contract for any of the other machinery or the liability of the purchasers thereof. * * * Failure to render friendly assistance and co-operation, or failure to give any of the notices in writing as provided for herein, or keeping the machinery after the five days allowed as above provided, shall be a waiver of the warranty, and a full release of the company.

"[Signed.]                                    Bolevard Brunut,
                                      "George Charlebois."

On the 8th day of September, 1899, the said defendants received said machinery and settled for same by executing and delivering to plaintiff three notes, for $940 each, and the machinery was taken to the farm of the defendants, and on the 9th day of September an attempt was made to operate it, and the separator would not properly separate the grain from the straw. No claim is made that the other machinery would not work to the satisfaction of the defendants. The separator failed to comply with the warranty, and on or about September 29th the entire rig was returned by defendants to the place where it was received.

The questions for determination on this appeal are—First. Have the defendants complied with all the conditions precedent to be by them complied with before they have a right to rely upon a breach of the warranty. Second, in case they have complied with all the conditions precedent to be by them performed, have they taken the proper steps to enforce such right, and are they now entitled to relief.

The warranty contains certain conditions which must be complied with by the defendants before they can rely upon a breach thereof. One of these conditions was that within five days from its first use, if the machinery failed to fill the warranty, written notice should be given to the plaintiff at Battle Creek, Mich., by registered letter, and also written notice to the local dealer, stating particularly what part and wherein the machinery failed to fill the warranty. Did defendants comply with this condition? They claim that on the 13th day of September, which was within five days from the time they commenced to operate the machinery, they registered a letter to the plaintiff at Battle Creek, Mich., containing a notice that the separator did not comply with the warranty, stating wherein it did not comply. The burden was upon the defendants to prove the giving of this notice. Have they done so? At the trial the defendants' counsel demanded from plaintiff's counsel the production of the letter sent to the plaintiff. Plaintiff's counsel stated in open court that it was too late to demand such letter and that counsel had no such letter, and that if the same was in existence it was more than a thousand miles from the place of trial. Defendants then offered in evidence a registry receipt, issued at the postoffice at Rolla, purporting to be for a letter sent to plaintiff on September 13th. Defendant Charlebois then testified to the contents of this letter; plaintiff objecting upon the ground that the same was incompetent, irrelevant, and immaterial, and no foundation laid for the introduction of secondary evidence, for the reason, as stated, that no notice was served on the plaintiff to produce the original. The defendant Charlebois then testified that the letter in question informed plaintiff that the separator did not separate the grain from the straw. Similar testimony was introduced regarding the contents of the letter sent to the agent, and the same objection was made to the introduction of this testimony. Was this testimony competent? The general rule is that notice to produce must be given before secondary evidence can be received as to the contents of a written document in the possession of the adverse party, but there is a well-settled exception to this rule. Where the issues framed by the pleadings necessarily disclose to the adverse party that proof of the document will be necessary at the trial, it is well settled that notice to produce the document is not necessary in order to admit secondary evidence of the contents of such document in case the original is not produced. The adverse party is bound to take notice from the pleadings that the production of the document at the trial is required, and in case it is not produced secondary evidence must be resorted to. The answer in this case necessarily informed the plaintiff that the defense relied upon was a breach of the warranty, and therefore the plaintiff was bound to know that in proving such defense the defendant would necessarily be required to prove the contents

of the notice sent in this registered letter. The reason for the rule requiring a notice to produce the original, therefore, did not apply. See 1 Jones, Ev. par. 24; *Kellar* v. *Savage*, 20 Me. 199.

Counsel for appellant contends that the notice was insufficient, in that it did not particularly call to plaintiff's attention wherein the machinery failed to comply with the warranty. We must overrule this contention. The trial court found that such notice was sufficient in this respect, and we think the evidence fully warrants such finding. The notice informed plaintiff that the separator did not clean the grain properly, without wasting the same, and we do not well see how the defect could have been pointed out more particularly than this.

Appellant further contends that the conditions of the warranty requiring defendants to allow plaintiff a reasonable time to get to the machine with its workmen and remedy the defect was not complied with. The evidence upon this question is conflicting, but the trial court found in favor of the defendants, and we are not disposed to disturb this finding, as we consider the evidence sufficient to sustain the same. The defendants gave the plaintiff sufficient time to remedy the defect, but the plaintiff wholly ignored defendants' letter, and no attempt was ever made to remedy the defect in the separator after the notice was given. We therefor think the evidence justifies us in holding, as we do, that defendants complied with the conditions precedent to be performed by them in order to entitle them to rely upon a breach of the warranty.

This brings us to the principal question in the case, which involves a construction of the contract between the parties. The contention of counsel for appellant is that the contract is divisible, and hence that the failure of the separator to conform to the warranty did not authorize defendants to rescind the contract as to the engine and other property purchased by them, and which complied with the warranty. If the contract was divisible, then, of course, the failure of the separator to comply with the warranty would not authorize defendants to rescind the contract in toto, especially in view of the express provisions of the contract to the contrary. It will be noticed that the contract is for a complete threshing outfit, at the stipulated price of $2,820 and freight. No price was fixed, either in the written contract or otherwise, on any of the separate articles. We are therefore confronted squarely with the question as to whether or not a contract for the purchase of several distinct articles for one consideration may be a divisible contract. The general rule enunciated by the authorities is that if the contract is for the sale of several distinct things, but all for one consideration, it is entire. 7 Am. & Eng. Enc. Law (2d Ed.) p. 96, and cases cited. See, also, *Katz* v. *Bedford*, (Cal.) 1 L. R. A. 826, and note (s. c. 19 Pac. Rep. 523). "Whether a contract is entire or severable depends, in general, upon the consideration to be paid, not upon its subject. If the consideration is single, the contract is

entire; but, if the consideration is expressly or by necessary implication apportioned, the contract is severable. When the consideration is entire and single, the contract must be held to be entire, although the subjects may be distinct and independent items." See numerous authorities cited in the note to 1 L. R. A. 826.

The supreme court of Iowa in a recent case, in disposing of this question, said: "Plaintiffs claimed the price of the perfection weigher in any event, because they say there was no breach of warranty as to it. But it was included in the order for the thresher at a gross price of $450. A rescission of the sale affected all the property covered by the order. There was a clause in the written order to this effect: 'Clover hulling attachments, baggers, weighers, wagon loaders, self-feeders, and other extra attachments are furnished at stipulated separate prices, and are subject to the above warranty.' We think the provision in the order to the effect that the failure of the warranty as to any separate part or attachment of the machine should not affect the liability of the purchaser, except as to such part or attachment, must be limited to a part or attachment furnished at a separate fixed price." *Robinson* v. *Berkey,* (Iowa) 82 N. W. Rep. 972.

Tested by this rule, which we believe to be supported by the great weight of authority as well as reason, the contract in the case at bar must be held to be an entire contract. By the failure of the parties to fix a price on the separate articles, they have made it impossible for the court to treat the contract as divisible, although certain language in the contract indicates that such was their intention. Counsel for appellant rely upon the cases of *Aultman & Taylor Co.* v. *Lawson,* (Iowa) 69 N. W. Rep. 865; *Nichols & Shepard Co.* v. *Wiedman,* (Minn.) 75 N. W. Rep. 208, 76 N. W. Rep 41; *Same* v. *Chase,* (Wis.) 79 N. W. Rep. 772.

In the case of *Aultman & Taylor Co.* v. *Lawson* the written contract was similar to that in the case at bar, but the evidence disclosed that the lump sum agreed upon was the aggregate of prices agreed upon as to the different parts. The court said: "True, the consideration is stated in one lump sum, but the evidence shows that sum was the aggregate of prices agreed upon as to the different parts. The contract does not show the prices on different parts, but, being silent on that subject, it was competent to prove what the agreement was in that respect, such proof not being in contradiction of such contract." The facts of this case are clearly distinguishable from those in the case at bar. Counsel for appellant in the case at bar offered certain evidence as to the list prices of these separate articles, but there is no evidence in the record that the parties ever agreed upon such list prices or any other prices as to each separate article. There is even nothing to show that defendants ever had any knowledge of such list prices, and therefore the objections urged to this testimony by defendants' counsel were well founded. In *Nichols & Shepard Co.* v. *Wiedman* the opinion does not disclose whether or not the price of each separate article was

agreed upon, but the case of *Aultman & Taylor Co.* v. *Lawson* is cited as an authority, and it is therefore fair to presume that the facts were similar in the two cases. The case of *Nichols & Shepard Co.* v. *Chase* is just as clearly not in point. While the written contract in that case is similar to the one in the case at bar, still the opinion discloses that plaintiff proved that just before and at the time that Mr. Chase signed the order for the machinery he and plaintiff's agent thoroughly talked over the prices of each of the separate articles mentioned therein, and the supreme court of Wisconsin in that case properly held it error for the lower court to exclude testimony tending to prove that each of the machines was put in the order at a separate and stipulated price, and as to what such price was. That court did not hold the written contract to be divisible. It simply held, as did the Iowa court in *Aultman & Taylor Co.* v. *Lawson,* that parol testimony was admissible to show that a separate price was agreed upon as to each separate article. In the case at bar, as we said before, no competent evidence was offered tending to show that a price was agreed upon as to each separate article, and hence the contract before us is for the sale of several distinct articles for one gross sum, and we must therefore hold such contract to be entire. It follows, therefore, that defendants had a right to rescind the contract in toto by returning the entire rig, as they did. In fact, this was necessary, if they desired to rescind at all.

Upon the trial defendants asked leave to amend their answer by adding to paragraph 3 thereof the following: "And also a certain note for $205, the consideration for which was the payment of freight upon said machine;" and by adding to paragrph 1 of the prayer for judgment the following: "And that said note for $205, referred to in paragraph three, be cancelled and returned to defendants, or that said defendants have judgment against said plaintiff for the amount of said note, together with interest from date thereon;" to which proposed amendment plaintiff objected for the reason, as stated, "that the evidence does not show there was a note given to the plaintiff in this case, and it does not show there was a note for $205 given to any person in connection with the transaction for the purchase of this threshing machine." No ruling was made at the time allowing or disallowing the proposed amendment, but judgment was subsequently ordered in favor of defendants, directing the return of said note to defendants for cancellation, and ordering judgment for the amount thereof, with interest in case the same is not so returned. The learned trial court, therefore, treated said amendment as allowed. The only testimony offered in relation to the subject-matter of this amendment was to the effect that this note was given to James O'Laughlin, who furnished the money to pay the freight on the rig. Was this amendment and the relief granted thereunder proper? We think not. The note was not executed to the plaintiff, and did not represent any portion of the purchase price of the rig. It was given to O'Laughlin, who, as the evidence shows,

advanced for defendants the money necessary to pay the freight on this rig from the factory to Rolla. True, O'Laughlin at the time was plaintiff's agent, but there is nothing to show that this note belonged to plaintiff or that plaintiff had anything to do with the freight transaction. The contract required defendants to pay the freight in cash. Whether, as a matter of fact, any freight was paid or not does not appear, either from the amendment or the evidence. If defendants paid the freight, then, under proper pleading and proof of such payment, they would be entitled to recover the same back from plaintiff, on the theory that the same was a part payment on the purchase price of the rig. Such was evidently the theory of counsel in making the amendment, but we think they have fallen far short of accomplishing their purpose.

There is but one other question requiring notice. Counsel for respondent made a motion in this court to strike out the statement of case, which motion was made upon the ground that the statement embraces a complete transcript of the reporters' notes instead of the substance thereof. In view of our holding upon the merits in this case, a decision of this motion is rendered unnecessary; but see *Bank* v. *Davis*, 8 N. D. 83, 76 N. W. Rep. 998, where it was held that § 5630, Rev. Codes 1899, as amended by chapter 5, Laws 1897, no longer requires that the evidence shall be reduced to narrative form in the statement of the case.

The judgment of the district court will be modified by eliminating therefrom that portion wherein it is adjudged that defendants recover from plaintiff the sum of $205 and interest, or the return of the note for $205 given by defendants for alleged payment of freight, and when so modified said judgment will be affirmed; the appellant to recover his costs in this court. All concur.

Morgan, J., being disqualified, took no part in the decision; Judge C. J. Fisk, of the First judicial district, sitting by request.