GEISER MFG. CO. v. CASSELL.

(Circuit Court of Appeals, Eighth Circuit. May 11, 1909.)

No. 2,874.

SALES (§ 168*)—CONSTRUCTION OF CONTRACT—SALE ON TRIAL.

Where a printed contract prepared by plaintiff for the sale by it to defendant of a steam thresher contained a warranty that the machine would do as good work as any made, but also a number of technical requirements to be observed by defendant making him liable for the price of the machine, even though it did not comply with the warranty, unless they were strictly followed, such as that he must report its failure to work after five days' trial to plaintiff in Pennsylvania and give it time to remedy the defect or substitute a new machine and return the machine if it failed to work to the place where he received it and accept another on the same terms, a written clause, added on demand of defendant, that "this machine is sold on this condition that the settlement for the rig is not to be made before after machine has been tried and fulfills its guaranty, and all kinds of grain threshed that a separator is made for, and party is satisfied that the rig works all right," superseded such provisions and became the test by which his obligation to accept the machine was determined; and, where a fair trial by defendant and experts of plaintiff demonstrated that the machine would not do good work, defendant was not bound to accept or pay for it because he did not comply with all of the technical provisions of the printed part of the contract.

[Ed. Note.—For other cases, see Sales, Dec. Dig. § 168.*]

In Error to the Circuit Court of the United States for the District of Minnesota.

This action was brought by the plaintiff below, being also the plaintiff in error, to recover the purchase price of a threshing outfit consisting of an engine, separator, feeder, and some other minor parts. The price was $2,150

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

and a second-hand machine, which the jury found to be worth $800. The defendant signed an order for this machinery, upon a printed form prepared by the plaintiff. It contained a guaranty "that the machinery is as well built, and all things being equal, will do as good work as any other machine in the United States." It bound the defendant to receive the machine and try it. In case of its failure to work satisfactorily after a five days' trial, he agreed to notify the plaintiff at its home office, Waynesborough, Pa., "by prepaid telegram and registered letter," stating wherein it failed to conform to the warranty. A reasonable time was then to be given to the plaintiff to remedy the defect, and, if that should be impossible, to furnish a new machine. It was further provided: "The failure of any separate machine or attachment, or part thereof, shall not affect the liability of the purchaser for any other separate machine that is not defective." Keeping the machine longer than six days, without giving notice of defect, was to be a waiver of the warranty. There was another provision binding the purchaser, if the machinery could not be made to fulfill the warranty, "to return same to place where received, at which time another may be furnished on the same terms of warranty." The foregoing provisions were all embodied in a printed form. At the time the defendant negotiated for the machine, he refused to sign the order unless other provisions were added giving him an opportunity to test the machinery in a fair and practical manner before any liability for its price should accrue. As the result of this refusal, there was added to the blank in writing the following provision: "This machine is sold on this condition that the settlement for the rig is not to be made before after machine has been tried and fulfills its guaranty, and all kinds of grain threshed that a separator is made for, and party is satisfied that the rig works all right." The order embodying this written provision was sent to the plaintiff's general agent at Minneapolis, in whose custody machines were kept, and who was vested with authority to enter into contracts for the sale of the same. He accepted the order, and shipped the machine. It was faithfully tried by the defendant, with the aid of two experts, supplied by the plaintiff, for six days, and as the result of that trial, in the judgment both of the defendant and the experts, it was found not to do good work, and the defects disclosed were of such a character that they could not be remedied. The defendant refused to accept the machine, and so stated to the plaintiff's local agent, and was told by him that he could leave it standing by the roadside, and that he, the local agent, would come and get it. The defendant at the same time mailed to the plaintiff, at its home office, a letter, stating the trial that had been made to use the machine, and the defects that such trial had disclosed. It was further stated that plaintiff's experts were unable to make it do satisfactory work, and that the agent "told me that if I could not make it run, to leave it on the place, and he would come after it and pay the charges and expenses. * * * I have had large experience in threshing, and I am thoroughly satisfied that this machine cannot be made to do good work, and hereby notify you to come and take it away according to the agreement, and I leave the machine at my place in the town of Hudson, subject to your order, as I received it at the station of Forada, and you have no agent there. Kindly let me hear from you at once." A similar notice was sent to the company at its general office in Minneapolis. Another copy was delivered to Mr. Haugen, the local agent, personally. The evidence showed that the general agent at Minneapolis received the notice, and thereafter sent experts to examine the machine. A motion was made at the conclusion of the evidence for a directed verdict in plaintiff's favor, which was overruled, and exception taken. Numerous exceptions were also taken to the charge of the court, and to its refusal to give certain requests. The jury returned a verdict in favor of the defendant.

Henry W. Benton, Joseph W. Molyneaux, and Frank J. Morley, for plaintiff in error.

C. J. Gunderson, for defendant in error.

Before HOOK, Circuit Judge, and RINER and AMIDON, District Judges.

AMIDON, District Judge (after stating the facts as above). Most of the contentions of the plaintiff rest upon a construction of the contract, which omits to give proper effect to the condition in writing which was added upon the demand of the defendant. By a well-settled rule, where there is any conflict between printed portions of a contract and those in writing, the written portions control. In our judgment the written stipulation in this case completely transformed the nature of the contract. The printed order was highly artificial—was prepared with studious care to protect every right of the plaintiff, and to impose upon the defendant an absolute liability for the entire purchase price of the machine, for a violation of any one of its many technical formalities. Such was its manifest design, even though the machine failed wholly to perform the work for which it was purchased. For this one-sided and technical scheme of the order, the written stipulation substituted a fair and practical arrangement. If, upon a just test, the outfit was found not to do good work, no liability was to arise for its purchase price. On the other hand, if it satisfied the warranty, the defendant became at once obligated to settle for it in accordance with the terms of the order. The evidence leaves no doubt that the defendant throughout the transaction acted with entire sincerity and justice. He gave the machine a fair and practical test under the supervision and with the aid of experts supplied by the plaintiff. His objections were not captious or technical. He did not refuse arbitrarily to be satisfied with a machine which did fair work. On the contrary, the outfit was found to be wholly inefficient to do the work for which it was sold. Upon these facts, by the terms of the written stipulation, there was to be no liability. The scheme of the printed order contemplated a test for six days. The plan of the written order fixed no such limitation, but provided that the threshing outfit should be tried upon "all kinds of grain that a separator is made for." We think this provision is inconsistent with the strict limitation of the printed order, and must control in the determination of the rights of the parties.

The three points made by the plaintiff which have most merit are the following:

1. The printed order contained the following language:

"Upon starting, if the purchaser is unable to make it operate well, notice wherein it fails to conform to the warranty is to be given by the purchaser to the Geiser Manufacturing Company, at Waynesborough, Pennsylvania, by prepaid telegram and registered letter. * * * Failure to notify the Geiser Manufacturing Company, as provided, shall be a waiver of the warranty, and a full release of the Geiser Manufacturing Company, without in any way affecting the liability of the party ordering."

It is conceded that defendant did not notify the plaintiff "by prepaid telegram or registered letter." The notice was sent in the ordinary course of mail. For this departure from the exact terms of the printed order it is now contended that defendant became absolutely liable for the purchase price of the property. This in our judgment would defeat the very object which the defendant had in mind when he insisted upon the written stipulation. He, no doubt,

was familiar with the painful experience of farmers arising out of the technical provisions of printed orders for farm machinery. He insisted upon naming the one sole condition upon which he was to be liable for the purchase price of the threshing outfit. That condition was that the machinery should, as the result of a fair and practical test, fulfill the guaranty upon which it was sold. For the court to impose a liability for a violation of any of the numerous minor provisions of the printed order would be to defeat the very object which underlies this written stipulation. The defendant's duty to give notice of the failure of the machinery to do good work arises, not out of the technical provisions of the printed order, but out of the nature of the transaction into which the parties entered. He accepted the machinery on trial, and was bound to give the plaintiff reasonable notice of its failure, and offer to return it. We think he has fully discharged that duty.

2. The printed order required the defendant to return the machinery "to the place where received, free of charge," if upon trial it was found to be defective. It is conceded that the defendant did not do this. He explained his reason for not doing it in his written notice. Forada, the place where the machine was received, was a small station at which the plaintiff had no agent, nor were there any other persons engaged in the machinery business at that place, so that defendant could have made them bailees of the machine. If he had taken it to the town and left it, he would have been compelled to commit trespass upon private property. In our judgment this provision of the order was intended only for places at which the company had an agency, or, in the absence of such agency, it required the defendant to return the machine to the station for loading, when notified by the company to do so. Even the printed order does not specify any consequences to accrue from failure of the defendant to comply with this provision. Such failure therefore would simply render him liable for the reasonable value of the service. If the plaintiff had notified him to return the machine to the station for shipment, he would have been liable to damages for failure to perform that part of his contract. That, however, would have been the full extent of his liability.

3. The printed order also contained a provision that:

"Failure of any separate machine or attachment, or part thereof, shall not affect the liability of the purchaser for any other separate machine that is not defective."

That, however, is a part of the scheme of the printed order. The written stipulation deals with "the rig" as an entirety. If it failed to do good threshing work, the defendant was to incur no liability. The different parts of a threshing outfit are made to work together. The defendant had good reason for refusing to be compelled to take a fragment from the plaintiff, and then be driven to search for other parts from other manufacturers.

In our judgment the written stipulation takes this case outside of the rules declared in the cases cited by plaintiff, the more important of which are the following: Larson v. Minneapolis Threshing Mach. Co., 92 Minn. 62, 99 N. W. 623; Northern Electrical Mfg. Co. v.

Benjamin Coal Co., 116 Wis. 130, 92 N. W. 553; Trapp v. New Birdsell Co., 109 Wis. 543, 85 N. W. 478; Avery Planer Co. v. Peck, 80 Minn. 519, 83 N. W. 455, 1083, Id., 86 Minn. 40, 89 N. W. 1123; J. I. Case Threshing Mach. Co. v. Ebbighausen, 11 N. D. 466, 92 N. W. 826; Nichols & Shepard Co. v. Caldwell (Ky.) 80 S. W. 1099; Davis v. Gosser, 41 Kan. 414, 21 Pac. 240; Nichols & Shepard Co. v. Rhoadman, 112 Mo. App. 299, 87 S. W. 62; Heagney v. J. I. Case Threshing Mach. Co., 4 Neb. (Unoff.) 745, 96 N. W. 175; Nichols & Shepard v. Miller, 76 Neb. 809, 107 N. W. 1010; Nichols & Shepard v. Wiedemann, 72 Minn. 350, 75 N. W. 208, 76 N. W. 41; Nichols & Shepard Co. v. Chase, 103 Wis. 570, 79 N. W. 772. All of these cases turned upon the unqualified provisions of printed orders, similar to the one shown by the evidence here.

The case was fairly submitted to the jury, and a just judgment was rendered. It is therefore:

Affirmed.