MASSACHUSETTS LOAN & TRUST COMPANY *vs.* BRIDGET WELCH, Administratrix.

August 27, 1891.

**Chattel Mortgage for Purchase-Money—Action to Foreclose—Counterclaim for Breach of Warranty.**—In an action to enforce a purchase-money mortgage, the mortgagor may set up and have adjudicated in the same action his claim for damages for a breach of warranty of the mortgaged property, in reduction of the amount due on the mortgage, and may defeat the action altogether if his damages are equal to the unpaid purchase price.   An assignment of the mortgage is without prejudice to such right of set-off.

**Sale—Conditions of Warranty—Waiver by Seller.**—It is competent for the seller to abrogate or waive the strict provisions or conditions of the warranty, though agents are not allowed to do so; and conditions involving the forfeiture of a right to recover damages for a breach thereof are not favored, and will be strictly construed.

**Same—Warranty on Sale of Threshing-Machine—Conditions—Waiver by Acts of Seller's Agent.**—Where, in a written agreement of warranty on the sale of a threshing-machine, it was stipulated that, if within three days after it was set up and started, it should not work as warranted, the buyer should at once discontinue its use, and notify the seller in writing, and wait for the seller to send a man "to right it," and within that time an agent representing the company, and authorized to make necessary repairs or changes, appears and undertakes the same, the required notice is superseded.   And where such agent, under his general

authority to make, or cause to be made, suitable repairs, has taken charge of the machine for the purpose of "righting" it, and, upon experiment thereafter, it continues to work badly and not as warranted, and the buyer, under his direction, continues to use it in reliance upon his promise to fix it and put it in complete repair, which he fails to do, the buyer does not forfeit his right to recover upon the warranty by reason of the expiration of the time limited in the contract for the trial thereof before the repairs are fully made; and the subsequent recognition of the acts of its agent by the seller, in attempting to complete the repairs as promised by him, will also be held a waiver of the strict terms of the warranty in respect to the trial of the machine.

Plaintiff brought this action in the district court for Winona county, in October, 1889, to recover possession of a threshing-machine, which had been bought by John Welch, the defendant, of the Minnesota Thresher Manufacturing Company, and mortgaged by him to the same company to secure $325, the unpaid balance of the purchase-money; $108.50 being payable on December 25, 1888, the same amount December 25, 1889, and $108 on December 25, 1890, with interest on each instalment at 7 per cent. per annum, according to the terms of the note given therefor. The mortgage contained the usual provision authorizing the mortgagee to take possession on default in payment of any instalment or of interest. The complaint alleged a transfer of the notes and mortgage to plaintiff, and default in payment of the instalment falling due December 25, 1889, and of the interest. The answer pleaded a counterclaim for breach of the warranty considered in the opinion, and prayed judgment that the notes and mortgage be delivered up to the defendant, or that he recover as damages the amount thereof; and that he also recover $150, paid on the purchase price of the machine, and the further sum of $500 as damages.

At the trial before *Start*, J., the jury found specially a breach of the warranty, and that defendant had been damaged thereby in the sum of $325, and found a general verdict for defendant for a return of the property or for $150, its value, in case a return could not be had. A new trial was refused, and the plaintiff appealed. Afterwards the defendant died, and his administratrix, Bridget Welch, was substituted as respondent.

*M. B. Webber*, for appellant.

*Keyes & Brown*, for respondent.

VANDERBURGH, J.   The questions involved here grow out of a warranty of a threshing-machine made by the Minnesota Thresher Manufacturing Company, plaintiff's assignor, on a sale of the machine to the defendant.   The latter paid part of the purchase price by turning over to the thresher company an old machine, for which he received credit in the sum of $150, as part-payment of the purchase price at the time of the sale, and gave his notes, secured by a chattel mortgage on the new machine, for the balance of the purchase-money. This action is brought to enforce the chattel mortgage by reason of defendant's default in the payment of the purchase-money.   He is entitled to set up the breach of warranty, and the damages suffered thereby, as a counterclaim or set-off against the amount due on the notes, and to defeat the plaintiff's action altogether if his damages are equal to the unpaid purchase price.   His claim for damages is so far a cause of action growing out of the sale that he is entitled to have such claim considered and adjudicated in the action.   The assignment of the mortgage was without prejudice to this right of set-off.   The jury found specifically that the defendant's damages were equal to the balance of the purchase price due, and generally for the defendant.   There was no error in the rulings or instructions of the court on this branch of the case.

2. The following is the warranty which was incorporated in the written agreement of the parties to the sale: "It is agreed that the only warranty or representations binding upon the seller are as follows : *First*, that said machinery is well built, and, with proper management, capable of doing well the work for which it was intended, and the engine of developing its rated power, conditional, however, that the buyer shall set up, start, and operate it in a proper and skilful manner, and without changing the original construction of any part of it.   The buyer shall have three days after it is first started to ascertain whether said machinery is or is not as warranted and represented.   If then it is not, he shall at one discontinue the use of it, and state full particulars wherein it fails, by letter mailed at once to the seller at Stillwater, Minn., and wait until seller gets a

man there to right it. The buyer shall render the man sent necessary and friendly assistance, and, after he is through, shall at once give the machinery a fair trial of two days; and whatever part of any machine is not as warranted or represented, he shall then return such part to where he got it, and the seller may either furnish another part, or may require the return by the buyer of the remainder of such machine, and then furnish another in its place, or refund what he received for it. If, however, the trouble arise from the improper handling of the machine, the buyer shall pay the costs of thus righting it. The use of part or all of said machinery after said two days' trial shall be conclusive evidence that it is as warranted and represented, and shall estop the buyer from all defences on any ground to the payment therefor. No claims, counterclaims, demands, or offsets shall ever be made or maintained by the buyer on account of delays, imperfect construction, or any cause whatever, except as provided herein. The terms and conditions hereof shall not be waived, altered, or changed without a special written agreement, signed by said thresher company or their specially authorized agent therefor, at Stillwater, Minnesota."

It will be observed by the terms of the warranty that the buyer is to have three days after it was started to determine whether it conformed to the warranty. The seller, upon the specified notice, is to send a man "to right it," and, *after he is through,* the buyer is to give the machine a fair trial of two days, and whatever part is not as warranted he shall *then* return, etc. It is easy to see that the brief period specified in the contract might, for various causes, prove insufficient for a satisfactory trial, and that both parties might deem further time necessary for a satisfactory determination of the character and operation of the machine, and, though the strict terms of the contract could not be waived by the subordinate agents of the company, yet the company itself could abrogate or waive the stipulations therein. *Lamberton* v. *Connecticut Fire Ins. Co.,* 39 Minn. 129, (39 N. W. Rep. 76.) Conditions of this kind inserted in a contract, and involving forfeiture of a right to recover damages for a breach thereof, must be strictly construed. *Westchester Fire Ins. Co.* v. *Earle,* 33 Mich. 143, 151.

Since the jury have found in favor of the defendant upon the evidence, we may assume that they accepted the testimony of Welch, her intestate, who made the contract, to be true. Among other things, it tended to prove that he bought the machine of one Fuller, the agent of the thresher company, and made the contract with the company through him. Fuller, it appears, had authority to sell, to set up, and start the machine, to see that it was in proper condition, and put in repair, and to direct generally as to these matters. Welch started the machine August 20, 1888, soon after he received it, and on the next day Fuller came out to observe its operation. He found it did not work well, gave instructions for further trial, and to send for him if there was any trouble. He had made some repairs. On further trial it failed to do good work, and Welch again sent for Fuller, who attempted to fix it, but failed to do so. He then promised Welch, if he would keep on and run the machine the rest of the week, he would come out on the following Sunday, and take out the cylinder, and have it repaired, so as to remedy what appeared to be the most serious defects in the operation of the machine. The agent failed to appear on the day set, and until the following Thursday, when he notified Welch that he was unable to fix it. It seems that it was necessary to send it to the shop, and so he instructed Welch to go on and complete the jobs of threshing he had engaged, and they "would have the machine overhauled and fixed over" for another season's work. Welch had previously notified him that he could not attempt to run it any more unless he could fix it. He ran it in all $19\frac{1}{4}$ days that fall, with the undertanding that it should be put in repair, and while it was confessedly not in a state of repair, the company not having yet completed the work of putting it in order. Fuller did not again make his appearance. On account of the breach of the contract, and the defects in the machine, Welch refused to pay the purchase-money note which fell due in December. Not long after that he received a letter from the company, as he testified, asking for the particulars, and inquiring why Fuller did not attend to the machine, and desiring a full statement in reference to its condition and operation. With this request he complied, and this was followed by a visit from a general agent of the company, who came

out in February or March, 1889, examined the machine, and reported to the company at Stillwater. Thereupon the general manager of the company sent a letter to Welch, requesting him to forward the cylinder to the shop for repairs. This was in accordance with the suggestion of both Fuller and the general agent. The cylinder was repaired and returned to Welch, and placed in position by him, and at the opening of the following threshing season Welch again attempted to use the machine, and found that it did not work well or as warranted, and after his first job, which lasted $2\frac{1}{2}$ days, laid it aside, and ceased using it altogether. The agent Orton, who succeeded Fuller, had promised to come out upon notice, and attend to starting the machine after the repairs, but failed to do so, and paid no further attention to its condition. The agent Fuller never succeeded in putting the machine in good condition, but delayed repairs until after the threshing season, on the ground that it needed extensive repairs. The company, being fully advised in the premises, undertook to do what Fuller had promised, but sent no expert to start it or see that it was finally put in order. The evidence shows a breach of the plaintiff's warranty, and, under the circumstances, there was no forfeiture on the part of Welch. The fact that the agent Fuller appeared within three days after the machine was first set up, and took charge of the repairs, of course dispensed with the necessity of any written notice to the company to send an expert. And it is apparent that the conditions did not subsequently exist under which, by the terms of the contract, there was a trial and retention of the machine by Welch, such as to work a forfeiture of the warranty. It is doubtful if Fuller transcended his authority, but, if he did, his acts were adopted and ratified by the company. There was evidence sufficient to support the verdict.

The principal assignments of error are disposed of in the foregoing discussion of the case on its merits, and the remaining ones do not, we think, require particular consideration.

Order affirmed.