HALE *et al.* v. VAN BUREN, HECK & MARVIN Co.

No. 60.   Opinion Filed May 13, 1909.

(103 Pac. 1026.)

PRINCIPAL AND AGENT—Sales— Machinery—Warranty—Breach—
Notice—Authority of Agent—Question for Jury.  The contract
provided that the ditcher was to be constructed and warranted
in compliance with letter of August 27th to S., and letter of
September 7th to H., and also in a subsequent clause therein it
was provided that "the machinery furnished under the above
order shall be made of good material, well constructed, and with
proper use and management will do more and better work than
any machine of its class; if inside of six days from the day of
its first use it shall fail in any respect to fill this warranty,
written notice shall be given by the purchaser to the V. B., H. &
M. Company, at its home office, Findlay, Ohio, by registered
letter,  *  *  *  stating particularly what parts and wherein it
fails to fill the warranty.  *  *  *  Local agents and salesmen
have no general agency powers.  *  *  *  Mechanical experts are
not agents and have no authority to bind the company by any
contract or statement whatever or to vary any terms or waive
any condition of any contract except they bear written order
from the manager."  S., a mechanical expert, was sent by the
V. B., H. & M. Company under instructions from the home office
to install said machine.  As to said machine he was authorized
to make settlements, including the making of allowances or de-
ductions for counterclaims on account of all the fixtures not being
sent, to do the mechanical work, and receive money under said
contract, receive notices, or any notice of defect or breakage in
the machine whilst he was present installing or operating the
same, and, if on examination he discovered any defects, he was
to repair or make the same right.  After he had left the place
where the said machine was located, he had no authority from
the V. B., H. & M. Company to receive any notice from the
vendee as to any defects in the machinery.  After he had set up
or installed said machine, within four or five days after, he left
Lawton, the place where the machine was installed.  On being
notified by the vendee by letter that the machine was not work
ing as per contract, he advised said vendee that he was working
under the instructions of V. B., H. & M. Company, and after-
wards, under instructions from said company, he returned to
Lawton and re-examined and again repaired said machine.  **Held**,
that the said S. was such an agent of the V. B., H. & M. Com-
pany that notice to him under the circumstances was sufficient
to have entitled the vendee to have submitted to the jury evidence

as to whether or not the machine complied with the conditions of warranty.

Kane, C. J., dissenting.

(Syllabus by the Court.)

*Error from District Court, Comanche County; F. E. Gillette, Judge.*

Action by the Van Buren, Heck & Marvin Company against J. R. Hale and others. Judgment for plaintiff, and defendants bring error. Reversed, with instructions.

On the 23 day of August, 1905, the defendant in error, as plaintiff, began its action in the district court of Comanche county, territory of Oklahoma, against the plaintiffs in error, John R. Hale and George W. Broe, as defendants, declaring in its petition on three certain promissory notes, each in the sum of $1,583.60, dated November 19, 1904, and due, respectively, three, six, and nine months after date, payable to the order of the defendant in error at the City National Bank of Lawton, Okla. T.; it being averred that said notes were given as a part of the purchase price of one Buckeye ditcher. On the 20th day of September, 1905, the defendant John R. Hale filed his separate answer, admitting the execution and delivery of the notes declared on solely and only for the purchase by defendant of one certain Buckeye traction ditcher, 54 inch by 12 inch, equipped with a 28-inch wheel and complete with the usual extras; that at the time of the execution and delivery of said notes a certain written contract of warranty, dated September 19, 1904, was made and delivered by the plaintiff to said defendant, by the terms of which it was agreed that plaintiff should and did warrant said machine in accordance with a letter of said plaintiff to one J. O. Severns, dated August 27, 1904, which is as follows:

"Findlay, Ohio, Aug. 27, 1904. Mr. J. O. Severns, Guthrie, O. T. Dear Sir: Replying to your valued favor of the 24th inst., we think with Mr. Bryson that you should have a 12 ft. machine. However, we can come under the time somewhat in which Mr. Bryson promises delivery. We could have this machine ready for shipment in six weeks after receipt of order. This machine would

have 75″ traction wheels with heavy steel gear rims riveted to the inside of the tires, tires to be ¾″ thick, 24″ wide, boiler to be the Scotch-Marine type 60″x104″, engines to be duplex slide valve 8¼″x 8″ cylinders, crank shaft to be steel forging, differential pinion and gear to be steel, machine to be equipped with No. 124 chain throughout, excepting on the feed which will be either No. 88 or No. 103. Excavating wheel to be constructed with heavy steel bucket tops, each armed with rooters, made entirely from tool steel, machine to have coal bunker and water tank beneath the engine, elevator to be driven with steel bevel gearing, gear segments and sprockets which drive excavating wheel to be steel castings, machine guaranteed to cut 60 lineal feet of trench per hour in ordinary earth at the depth of twelve feet, machine to have low speed, nine inches per minute, high speed of eight feet per minute with engines running at their regular speed. Excavating frame to be constructed of steel, as will also the standards connecting the excavating frame with the machine. Machine to be heavily and thoroughly braced throughout and to be first-class in every respect. Ground wheels to be constructed with removal and cleats, also front lugs. Tiller wheel to be constructed with removable holding tire for the purpose of moving over asphalt pavement, machine to be a strong and powerful puller so that it can be used as a road locomotive when required. Price of machine to be $5000.00 f. o. b. cars factory. Terms either cash on acceptance (which must be within six days after the machine starts) or bankable paper which the National Bank of Commerce of Guthrie will accept at face value, without our indorsement. We will stake our reputation on the performance of this machine and give you a machine which will run six days in the week, one which you can bank on opening up a given amount of trench each day and thus obviate the necessity of having more men than will be necessary to keep your pipe gangs going. We are sending a copy of this letter to our Mr. Bryson with whom you can take the matter up further. The machine will work in a 20 ft. alley and will cut to a width of 28 inches. We trust the above will meet with your approval and to be worded strongly enough so that if the machine is large enough for your work you will not hesitate in placing your order. We presume that a wheel 28 inches in width will be wide enough for your requirements. The actual width of cut will over-run this from an inch to an inch and quarter. We will not construct a wheel lesser width to cut to a depth of 12 feet. Very

truly yours, The Van Buren, Heck & Marvin Co., by C. J. Van Buren, Pres. Dict. CJV/G."

And also a letter to J. R. Hale, dated September 7, 1904, as follows:

"Findlay, Ohio, Sept. 7, 1904.  Mr. Jno. R. Hale, No. 302 C. Ave., Lawton, Okla. Ter.  Dear Sir: Further in regard to your favor of the 30th ult., the writer was out of the city at the time your letter answered.  On his return last evening the correspondence was gone over and we find that you were not given the information asked for.  You want a 12′ machine.  We have one which has put in about a thousand feet of extremely hard material.  In fact there was no earth at all.  It was all shale, most of which could be picked, interspersed, however, with flinty ledges which were impossible to excavate except by blasting, that is, with the ordinary method.  The machine went thru it.  The machine was worn somewhat.  We are replacing all worn parts and will have the machine in readiness for shipment in about two weeks time.  Equipment as follows: Boiler is horizontal Scotch-Marine type 66″ in diameter 9′ 7″ in depth, furnace 34″ in diameter, shell ⅜,″ heads ½,″ furnace ½,″ tubes 68-3,″ length 96,″ boiler is equipped with a dry pipe instead of dome to allow for the stack being topped backward and passing under trolley wires.  Engine is duplex, 8¾″x10″ cylinders, coupled to forged steel crank shafts 4″ in diameter; tiller wheels 54″ in diameter, 24″ tire with removable center rings; traction wheels 75″ in diameter, 24″ in width, rear axle 6″ in diameter.  Excavation wheel is equipped with a heavy steel top and rooters similar to the 24″ machine described.  The wheel cuts to an actual width of 30″ and to a depth a little in excess of 12 feet it being our 28″ wheel.  This machine is built to carry a larger wheel so that when necessary any size wheel up to 54″ can be purchased for this machine.  The machine, of course, is equipped with a more powerful traction than is our 24″ of same type, it being a much heavier machine is capable of pulling a much heavier load, when used as a road locomotive.  All worn parts having been replaced on this machine, it is guaranteed in every way same as a new machine.  This machine is priced new at $6,500.00.  We will make you a price of $5,000.00 f. o. b. cars factory.  Machine in ordinary earth and at depth you describe should open up an average of 1,200 feet a day.  If this machine will answer your requirements, we will advise that you wire us immediately upon receipt of this latter.  We will not quote it to

other parties within the next few days so as to give you time to secure it. The machine is built for hard and continuous service and is first-class in every particular, and from the fact that we can make extremely early delivery on this machine it would appear to us that it is an opportunity you should not miss. Trusting that you may see the matter in the same light as ourselves and awaiting your reply by wire or otherwise, we are very truly yours, The Van Buren, Heck & Marvin Co., by C. J. Van Buren, Pres. Dict. CJV/F."

Said contract is in part as follows:

"Ditcher to be constructed and warranted to in compliance with letter of Aug. 27th to J. O. Severns of Guthrie, O. T., and letter of Jno. R. Hale, of Lawton, O. T., of Sept. 7th, 1904. Final settlement to be made on acceptance of machine.

### "Warranty.

"The machinery furnished under the above order shall be made of good material, well constructed, and with proper use and management will do more and better work than any machine of its class. If inside of six days from the day of its first use it shall fail in any respect to fill this warranty, written notice shall be given immediately by the purchaser to the Van Buren, Heck & Marvin Co., at its home office, Findlay, Ohio, by registered letter, and written notice also to the local or general agent through which the same was received, stating particularly what parts and wherein it fails to fill the warranty, and a reasonable time allowed the company to get to the machine with skilled workmen and remedy the defects, if any there be (if it be of such a nature that a remedy cannot be suggested by letter), the purchaser to render all necessary and friendly assistance and co-operation in making the machinery a particular success, and providing opportunity for a fair test or trial of the machine by the company's experts. If a mechanical expert visits the machine for the company and does not leave it working properly, the purchaser shall give immediate notice in writing or by prepaid telegram to the company at its home office, and to the local or general agent, and state in writing specifically any failure or neglect complained of, and allow time for another expert to be sent and see the machine. If any part of the machinery cannot be made to fill the warranty, that part which fails shall be returned immediately by the undersigned to the place where it was received, with the option in the company

Vol. 24—2

whether to furnish another machine or part, in place of the machine or part so returned, which shall perform the work or return the money and notes which shall have been given for the same and thereby rescind the contract pro tanto or in whole as the case may be, and be released from any further liability whatever herein.

"If any metallic piece breaks during the first season by reason of a flaw therein, the company will furnish a new piece in its place, free on board the cars at its factory, upon such broken piece being returned to the company promptly if it appears thereby to the satisfaction of the company that the break was caused by the flaw.

"Failure to pay for the machine in the manner above provided, or failure to give any of the notices in writing as provided herein, or failure to render friendly assistance and co-operation, or keeping the machinery after the six days allowed as above provided, or any abuse, misuse, unnecessary exposure or waste committed or suffered by the purchaser, shall be a waiver of the warranty and a full release of the warrantor without in any way affecting the liability of the purchaser for the price of the machinery or notes given therefor.

"Notice:     All agreements appertaining to this order (except the mere acceptance thereof at the home office) are included in the above.

"The above warranty is the form furnished by the Van Buren, Heck & Marvin Co., and is the only form of warranty made or authorized by it to be given on any of the above named machinery. Local agents and salesmen have no general agency powers, and are authorized only to make sales in accordance with special instructions and upon the forms furnished by the company. Mechanical experts are not agents and have no authority to bind the company by any contract or statement whatever or to vary any terms or waive any conditions of any contract except they bear written order from the manager. This order is subject to the acceptance and approval of the said company at its home office, and when so approved and accepted is a binding contract which no person has authority to modify or vary in any respect, or to waive any of its conditions except in writing approved by the management at the home office, and any attempt to otherwise change any of the terms or waive any of the conditions of the warranty will not be binding on the company; nor will any modification in the

price, terms of payments or security in any way affect the warranty and its conditions. This form of contract is furnished in duplicate; see that you have a copy of it and keep it for reference. Formal notice of acceptance or rejection of this order is hereby waived. This machine is to remain the property of the Van Buren, Heck & Marvin Co., until settled for. No verbal promise or agreement shall be valid as against or in addition to any of the conditions herein specified."

The other defendant, G. W. Broe, answered, denying each and every allegation in plaintiff's petition, and further averred that in signing the notes declared on it was as surety for the principal, John R. Hale, and that, if he is liable at all on said notes, it is only as such surety. The proof offered on the part of the defendants showed that a party by the name of Schon, as an expert and agent and representative of the plaintiff, came to Lawton and superintended the installing and operation of the machine for 14 days; that, before the agent left, discovery was made by the defendant Hale that there was something wrong with said machine, this being two or three days before the six days had expired and before Schon left, there being cracks in the digging rim or digging wheel, there appearing to be holes drilled in this rim, and it apparently having been used before; that the defendant Hale spoke to Schon about it, and said he would notify the home office in accordance with the contract, but that Schon said that it was not necessary, that he was agent of the company, and that notice to him was sufficient.

Counsel for defendants filed with the court a written tender of testimony, covering the answers to the questions objected to and other proof which they desire to offer; the body of said offer being as follows:

"And now comes the defendant John R. Hale, and here makes the following offer and tender of proof by witnesses now personally present in the courtroom, and who have been duly sworn and are ready to testify—that is to say, John R. Hale, Geo. W. Broe, T. W. Montgomery, Bert Reed, Tom Wilson, Charles Turner, and T. L. Lowendusky—together with the deposition of the witness Schon now on file, the following state of facts, to wit: That

defendant offers to show by the deposition of the witness Schon that he took the notes in controversy, made allowance for the certain pieces of the ditcher in question, and that he made report of his doings in each particular to the plaintiff company, and his acts were approved and ratified by the plaintiff, and that in a territory where there was no salesman he had had the powers of a general agent of the company, and that within the particular territory in which the sale in this case and covered by the warranty herein was made there was no local or general agent of plaintiff.

"Said defendant offers to prove by the defendant John R. Hale, now on the stand as a witness, that the ditcher mentioned and described in the warranty herein was shipped from the factory and arrived at the city of Lawton about October 20, 1904. That said machine was unloaded and set up by the agent of the company, whose name was Schon, the proof of whose authority has heretofore been tendered. That Schon operated said machine for about eight working days, covering a period of about two weeks, and in said time cut a small amount of ditch for the waterworks system in the city of Lawton on F street therein, after which said machine was moved by said Schon to the place provided for sewer outlet on Cache creek, about one mile from the southeast corner of the city of Lawton. That after said ditching machine had been run by said Schon upon said waterworks trench, which was shallow digging not to exceed four feet in light dirt, and within six days after the first use of said machine, and while under the management and direction of said Schon, the said ditcher was taken to the aforesaid sewer outlet on Cache creek, and there put to work in loose, sandy soil, to its full cutting depth, practically 12 feet. That before said machine had been run by said Schon 100 feet, the same broke one of the principal sprocket wheels in two across the entire wheel, and through the hub thereof, and that said machine was prevented from being operated during a time when said sprocket wheel was being repaired, which consumed about 1½ days' time. That after the repair of said sprocket wheel, and before said machine had cut to exceed 400 feet in the dirt as described and of the character aforesaid, viz., light and sandy soil, there was a second breakage in said machinery, in this: that the travelers or trolley wheels, which held the digging wheel in place, became entangled and broken, and as a result thereof the buckets and bucket brackets were tore loose

and the rivets therein broken, requiring a further delay of something like two days in which to repair the same, each of said breaks herein referred to being within six days after the first use of said machine. That, after said repair of said breaks occasioned by the displacement and breakage of the travelers as aforesaid, said ditcher was used to cut about 400 feet west of said sewer outlet to about the southeast corner of the said city of Lawton without further breakage, except that on every night the rivets in the cutting rim of the digging wheel, numbering something over 1,000, of various sizes, were tightened and riveted under the direction of the aforesaid Schon during the entire time that said machine was operated under his direction as aforesaid. That at about said time and after said machine had been used about eight working days, said Schon, as agent of said plaintiff company, came to the said John R. Hale, exhibiting to him a telegraphic message, and stated, in substance, that he was required to leave said machine, and desired to take the notes of the defendants herein for the same before leaving, and asked said John R. Hale if he was satisfied with said machine; that said Hale responded to said Schon by saying that he was not at that time familiar with that particular kind of machine, and asked said Schon if the same in his judgment as an expert was all right and in perfect condition, to which said Schon replied that said machine was then all right in every particular, and that same would fully comply with the warranty, and would do the work then before the said John R. Hale under this contract all right. That two or three days before the date of said Schon's departure said John R. Hale called the attention of said Schon to several cracks in the cutting rim of said wheel, some six or eight in number, which were over the inner edge of said rim, about three-eighths of an inch, to holes which had been bored therein for rivets, and said Schon informed said Hale that said cracks were insignificant, and would not in any manner in his judgment as an expert affect the stability of the wheel. That each of said breaks, which the said Schon assured said John R. Hale would amount to nothing, continued across the entire place, forming the cutting rim of the digging wheel in each of said places where said cracks then were, and that said cracks became apparent and noticeable within two days after the departure of said Schon. That on the occasion and during all the time that said Schon was in charge of said machine the same broke down as aforesaid, and in many particu-

lars did not perform the work required of it by the terms of the warranty, which fact this defendant called to the attention of said Schon, but that said Schon assured said defendant by stating to him that the plaintiff would make said machine perform the entire work which was required of it under the terms of the warranty and the letter to this defendant and the letter to J. O. Severns mentioned in said warranty, and but for said assurances neither the said John R. Hale nor said defendant George W. Broe would have signed the notes herein. That said defendant offers to show by the said John R. Hale that said ditcher was at all times after the departure of said Schon operated by thoroughly competent engineers and machinists and the parties whom Schon stated to Hale were then fully competent to operate, care for, and manage said ditcher in its said work.

"That said defendant further offers to prove by said John R. Hale that within six days after the first use of said machine, and after the same had been broken as heretofore set out, the said Hale, in the presence of said Schon, directed the said George W. Broe to give written notice to the company, under the warranty, that said machinery was defective and broken down, and would not be accepted by him, and the said Schon, in the presence of this defendant said to this defendant and to said Geo W. Broe that it would be unnecessary to give any notice to said company under said warranty, for the reason that he was fully authorized to adjust all matters with reference to said machinery, and to care for the same, and that he himself stood in the place of the company, and that said Schon told both of said defendants that it was unnecessary for them to give any other or further notice under the terms of said warranty. That at the time the said Schon was requesting these defendants to execute the notes in controversy in the presence of each of them the said Schon accompanied said John R. Hale to the store of the said George W. Broe in the city of Lawton, and said Schon, in substance, there stated that he desired to take the notes of said Broe and Hale, and asked said Broe what about signing the same at that time. That said Broe on said occasion asked said Schon if said machine would comply with the requirements and promises made for the same in the Hale letter of September 7, 1904, and the Severns letter of August 27, 1904, and cut 1,200 feet of ditch as stated in said letters, and run continuously six days in the week, and that, if said machine would fulfill all these conditions, he would not be afraid to sign the notes,

but that, if the machine was going to break down as it had done on the run from Cache creek to the city limits, he did not want to sign them at all. That said Schon then stated that said machine was in perfect repair, and with the help which said Hale had about said machine Hale would be able to operate the same without difficulty, and continuously as required by the warranty; that notwithstanding the careful and skillful operation of said ditcher by careful and skillful mechanics, to wit, T. W. Montgomery, Orville Smith, and others experienced in handling machinery, the said ditcher within two days after the departure of said Schon, on or about the 19th day of November, 1904, became broken in the rims of the digging wheel to such an extent that the same—said rim—was absolutely worthless and beyond hope of repair, and that said breakage came because of the inferior quality of the material used in said cutting rim, and the improper, imperfect, and faulty construction of said machine. That for three or four days thereafter said Hale, together with Montgomery, Orville Smith, and other mechanics, endeavored to make repairs on said cutting rim, which efforts were without success. and that thereupon the said Hale notified the plaintiff herein of the breakage of said rim, and at the same time requested the replacement thereof, and the sending of some man expert with said machinery who could place the said machine in first class shape. That said defendant has not said original letter, but has demanded the production thereof by said plaintiff herein, and the same has not up to this time been produced on the trial hereof. That in response to said letter said John R. Hale received from said plaintiff in the usual course of United States mail a letter under date of December 5, 1904, as follows:

" 'We have your letter of November 30th, and in answer will say that we are very much surprised at this rim breaking in your wheel. This is something that we cannot understand, as this same wheel cut 6,000 feet of shale rock 9 feet deep, and we are at a loss to know why it does not stand the strain of your work. However, as it is broken, we will make you a set of rims out of $\frac{3}{4}''$ x''' and send them to you at the earliest possible date. We have none of this material on hand and we will have to order it from the mill, which we have already done. This will necessarily take some little time and we would advise you to have your wheel patched the best you can, as it will probably do your work. In regard to sending you a man, will say that it will be impossible

for us to send you one of our best men for a week or ten days, and we would not want to send a man who could not fix your machine in first class shape. Our Mr. Schon is now in Iowa and cannot leave there until the above time, and if you still think it necessary for a man to come at that time we will have him go back to you. The steel No. 1's made as per your order are on the road by express and we trust you may be able to get your wheel fixed so that you can go ahead with your work, as it will take at least 10 days, or probably two weeks, to get this rim material from the mill and then we will have to make it up and ship to you. In changing the wheel from $\frac{1}{2}''$ to $\frac{3}{4}''$ rims it will necessitate shortening the bucket backs $\frac{1}{4}''$ on each end and which we believe will be easier done than to stretch the bucket tops one inch. However, if you think the latter is easier done it will work either way.'

"That after the receipt of said letter of December 5th by said John R. Hale he telegraphed said plaintiff herein prior to the 13th day of December, 1904, asking in substance for the cause of delay in furnishing said rim, and that on the 13th day of December, 1904, the plaintiff wired the said defendant John R. Hale: 'Are expecting material in a few days. Will do our best.' That, in further response to said telegram, said John R. Hale received from said plaintiff company a letter, which is as follows:

" 'We have your telegram of last evening and answered it "Are expecting material in a few days; will do our best." We are indeed sorry about the rims of your machine breaking. While it is something hard for us to understand, we will not hesitate in the least to furnish you new rims for the wheel just as quick as we can get hold of the material to make them, but as we wrote you in our former letter it will take some few days to get this material from the mill, as it was heavier than anything we have ever used. We ordered the material upon the receipt of your first telegram and are now expecting it within a few days. We will lose no time in making you these rims and forwarding them to you. Regretting your trouble and promising you everything possible to help you out, we are,' etc.

"That thereafter, and between the 13th day of December, 1904, and the 22d day of December, 1904, the said John R. Hale again sent a telegram to said plaintiff with reference to said material for said cutting rim, and that in response thereto said Hale

received from said plaintiff by due course of United States mail the following letter:

" 'In answer to your telegram will say that we have been trying in every way possible to get the material here to make your rims, and we expected sure to hear from it yesterday, but as yet it has not shown up. We will keep after it every day until it arrives and will forward it to you without delay.'

"That affiant has not the original telegram nor the copy thereof to said plaintiff, and said Hale is informed that it is the rule of the Western Union Telegraph Company, with whom the original message was deposited, to preserve the original of messages six months after their date, and then destroy the same, and that said John R. Hale has demanded in writing herein the production of the copy thereof by plaintiff herein, and up to this time the same has not been produced. That on the 29th day of December, 1904, he received a further message from said plaintiff, dated at Findlay, Ohio, on said date, as follows: 'Expect material tomorrow will work day and night for you.' That some time during the months of January, 1905, the exact date the said Hale cannot state, in response to the notice which the said John R. Hale had theretofore given, the said Van Buren, Heck & Marvin Company, in pursuance of their written promise so to do, again sent the said Schon to replace said cutting rim heretofore referred to and to make further repairs upon said ditcher, which had been broken, and that at said time the said defendant Hale did in every way render the agent of the said plaintiff all necessary friendly assistance to make said machine do the work which was required of it by the terms of said warranty, and that at said time said Schon worked upon said machine for the period of three weeks or more the said Hale paid all the blacksmith and other bills and the cost of all help and labor in rendering the necessary assistance to said Schon in endeavoring to make said machine perform its work. That almost immediately after the said Schon left said machine the second time the sprocket shaft which propelled the digging wheel, and without which said machine could not be operated at all, by reason of the defects in the material thereof also became broken, and as a matter of fact said shaft was at least one-half inch less in diameter than the sprocket wheel and the other connections thereon were made for; in other words, that said sprocket wheel and the other connections to have a shaft which would fit them would require a shaft at least one-half inch greater

in diameter than the one that became broken, and that without said larger shaft the machine was in that regard defectively constructed. That the said plaintiff did in fact furnish a complete new rim for the said wheel upon which defendant was compelled to pay express to the amount of $120. That never at any time during the time of the operation of said machinery was the digging wheel of said ditcher steady or rigid as the same should have been had said machine been properly constructed, and that the same was not so steady and rigid as required by the terms of the warranty set out in the letters to Severns and Hale for the reason that the same was not heavily and thoroughly braced throughout as required by the terms of the letter of said plaintiff to said Severns dated August 27, 1904, and forming a part of the special warranty of said machinery, and that in consequence of said machine, and especially the cutting and digging wheel thereof, with which all the digging and cutting was done, not being thoroughly braced, that the plates composing the sides of the cutting rim would become loosened at different places, and it was almost impossible during any of the time that said machine was in operation to keep the same from cutting the rivets which were provided to hold said rim in place, but that said rivets would become broken or loosened to such an extent as to require about three hours' labor of all the mechanics who could conveniently work upon said wheel to replace and tighten said rivets to every hour which said machine would work in cutting ditch, the purpose for which the same was purchased.

"That some time, and about one month or near that period of time, after the second visit of said Schon to said machine, the said Schon again visited the same at Lawton, and had further conversation with reference thereto with the said defendant Hale, and that on said occasion the condition of said machine was further called to the attention of said Schon, and he at said time made suggestions with reference to the further repair thereof in attempting to make the same perform the conditions of the warranty, which suggestions the said Hale endeavored to carry out. That said plaintiff was advised by letter, and its agent, Schon, was also advised by being taken in person over the ground where the defendant Hale was required to cut sewer ditch by his contract, and knew the character of the ground through which the machine would be required to cut in order to allow said Hale to perform his subcontract with the said J. O. Severns, government

contractor, for the sewer system of the city of Lawton. That at all times from the very first of the operations of said machine down to the time that its use was entirely dispensed with said machine was operated by thoroughly competent men, experienced in the operation and handling of such machinery, and during the last six months when it was attempted to operate the same its handling was entirely under the direction of one Schwartz, who was recommended to the said Hale by said Schon, and by the plaintiff herein, as a man coming from the factory of said plaintiff, and thoroughly familiar with the operation of such machines erected by them. That said Hale in the course of his attempts to operate the said ditcher expended in money and contracted debts for which he is liable for labor and materials in and about the repairing of said machine to more than the sum of $4,500, and that the greater portion thereof was for iron, steel, and transportation thereof to the city of Lawton, and the expenses of blacksmiths and other skilled mechanics in making such repairs, and that this defendant, during the greater portion of said time that he was attempting to use said ditcher, did himself personally, and which he has not taken into account, work late into the night, nearly always as late as midnight, and often later, in attempting to make said machine do its work and repair the same so that he could keep the same in operation during the working hours of the day. That in truth and in fact said machine never did and never would continuously run for the period of six days at any time, nor did the same ever run as much as six hours continuously without repair, with the most careful and skillful handling. That if said machine had been as represented and warranted in the printed warranty herein, and the special warranty contained in the letters of August 27, 1904, to J. O. Severns, and the letter of September 7, 1904, to the said John R. Hale, said machine would have been well worth the sum of $5,000, which this defendant agreed to pay for the same, but that in truth and in fact said machine was wholly and entirely valueless for the purposes for which it was sold, and did not in any respect fulfill the warranty and special warranties with reference thereto, and that the same is not worth to exceed the sum of $500 for any purpose, and that only for the value which it may possess as scrap-iron and junk, and said defendant furthermore offers to prove that said machine did not fulfill either of the special warranties in letter of August 27, 1904, to J. O. Severns, and letter of September 7, 1904, to

J. R. Hale, by the witnesses heretofore named and sworn in this cause.

"To corroborate each and all of the foregoing facts as to the poor material used in the construction of the ditcher and the poor way in which the same was constructed and its unfitness to do the work as provided for under the warranty, and that it utterly failed to do the work, the following witnesses who worked on and about the machine, and are familiar with all the facts, are tendered: T. W. Montgomery, J. W. Good, Bert Reed, Chas. Turner, T. L. Lowendusky, ——— Vilmont, and ——— Mitch. And to substantiate and corroborate each and all of the foregoing and above facts, in so far as they relate to the imparting of notices to the agent Schon, both within the six days period and after that, the following witnesses are tendered for said purpose, to wit: George W. Broe and T. W. Montgomery. As to the value of said ditcher at the times mentioned the name of T. W. Montgomery is hereby tendered as a witness to corroborate and substantiate such facts as hereinbefore set out."

The court held that the proof tendered was not sufficient to discharge the conditions contained in the warranty, or to permit the plaintiffs in error to avail themselves of the benefits of the warranties; plaintiff objecting to all of the testimony offered on the ground that it was incompetent, irrelevant, and immaterial, and because under the pleadings the proof was inadmissible to show any fraud on the part of the company or its agents, which objection was sustained. The defendants duly excepted on the ground that the testimony offered showed that there was a breach of the two special warranties contained in the letter of August 27, 1904, to J. O. Severns, and in the letter of September 7, 1904, to the defendant Hale, and that the notices which the court held were necessary to be given, and for the want of which the court held that the terms of the warranty were not complied with, have no reference to either of said special warranties. The defendants further objected and excepted to the ruling of the court generally. The court thereupon discharged the jury over the objection and exception of the defendants, and held that the tender of the testimony was insufficient to overcome the requirements of the war-

ranty in question, and the same was excluded on motion,·to which the defendants excepted.

S. C. Schon testified as follows:

"Q. When you were in that territory out there, you were the agent of the company? You were their representative out there, were you? A. Yes, sir. Q. Was there any other representative there, where you were? You acted as agent of the company, didn't you? A. When I was in territory where there was no agent, I did, in making settlement, but, if there was an agent, he came and did the settling. Q. In this case we speak of there was no representative? A No; I had my instructions from the company to settle that. Q. When they notified you when you were at this experimental college to come down and fix the machine, did you notify the company (this was after he had first set up the ditcher)? A. No; I wrote back, and told these fellows I was working for the Van Buren, Heck & Marvin Company, and I would receive my instructions from them. Q. After you had instructions from the company, then you went out? A. Yes; they had to make these rims, and after they were made I went out (this was his second trip). Q. When you were fixing the machine, did you require any assistance? A. Yes, sir. Q. And did Mr. Hale or Mr. Severns or Mr. Broe help you, or did their assistants help you? A. Yes, sir. Q. They rendered all friendly assistance necessary to help you, did they? A. Yes, sir. Q. Now, when you made this settlement at the hardware store that you speak of, I would like to have you tell exactly how that settlement was made, if it was a settlement? A. I told Hale in the afternoon I would have to insist on a settlement. Q. At that time, in addition to being their representative, you were their mechanical expert? A. In places where I was sent where there was no representative I would make their settlements. Q. And also do the mechanical work? A. Yes, sir. Q. As such agent you made this settlement of the company? A. Yes, sir. Q. Just tell what took place at this meeting—at this hardware store? A. After this conversation he wanted me to make allowance for the conveyor, and there was not two sets of rooters. I couldn't deny that. Then he wanted me to stand the express on one wheel and a little blacksmith bill. Well, I told them providing they would give me a little cash expense money out of it so that I could get to the next place without waiting to hear from the company I would make the allowance, and they said they would do that, and take this reduction out of the written contract.

They gave me a check and drew the notes, and Hale signed them, and then Broe signed them, and then the next morning Mr. Hale went with me to the bank to get the money. Q. How much was that? A. I think it was $100. Out of that I had to pay some little bills there. Q. And the balance was divided into three notes as near as you could make them? A. Yes, sir. Q. Was that all the papers exchanged at that time? No bill of sale or anything of that kind? Did you receipt for the $100? A. I think that was receipted on the bill. Q. You gave them credit for this $100 on those three notes, and that was all there was of the transaction? A. Yes, sir. Q. When was it you started the machine. A. Started to dig with it? Q. Yes, sir. A. I think it was along the fore part of November. Q. Now, Mr. Schon, you were not the agent of the Van Buren, Heck & Marvin Company for the territory of Oklahoma or around Lawton, were you? A. No; not for the territory. Q. You were not agent for any territory? A. No; only I did settlings sometimes. Q. Had you any authority to make any representations or any settlements outside of the written instructions you got from the office? A. No, sir; I had not. Q. Did you make any such representations? A. No, sir; I did not. Q. I will ask you, Mr. Schon, if you were authorized by the company to receive any notices or any notice of defects or breakages in machines that you were experting for the company, if you were authorized to accept notice of defects or breaks? A. Yes; from customers. If they seen any defects, they always told me to make it right. Q. What I had reference to is after you had experted it and got away from there. Were you authorized to receive these notices? A. No, sir. Q. Did you receive any notice by registered mail from Hale or Broe or Severns with reference to this Lawton machine. A. I got a letter, but I don't know whether it was registered while I was up at Ames. I don't think it was registered or by special delivery. Q. How long after you left Lawton when you got that letter? A. Probably four or five days. Q. What did you do about it? A. I wrote back, and told them I was working for the Van Buren, Heck & Marvin Company, and was getting my instructions from them. Q. What was the nature of that letter? What were they after. A. Well, part of it was business, and part of it was a sociable letter. They said they were having trouble with the wheel, and I had better come down and fix it. Q. Did they state what the trouble was? A. No, sir; they did not. Q. Could you state what the trouble was?

A. No; I could not, because it was not described so a man could tell. They said they were having trouble. There are many ways it could get out of order. Q. Did you know from that letter written to you at Ames, Iowa, by Mr. Hale, what the trouble was with the machine? A. No. Q. You said you had authority to make settlings similar to this? A. Yes: when they give me instructions. When there was no agent in the territory, they would ask me to make these settlements. Q. Was there any agent in this territory? A. Not that I know of. Q. And you had authority to make right defects up to the time you left? A. Yes, sir. Q. And, when you received this letter from them at Ames—you say after you left you received a letter at Ames—when you received that letter as I understand, you say they wrote they were having trouble with the wheel—is that the way you put it? A. Yes, sir. Q. This authority that they gave you to do this agent work when there were no agents in the territory, was that given to you verbally? A. Several places I had written authority to settle for the machine, telling them I was authorized to settle for the machine. It was to introduce me, and gave me authority to settle with them."

Witness testified that also in the latter part or middle of March he was back at Lawton, and was then still in the employ of the defendant in error.

*W. C. Stevens, B. M. Parmenter,* and *C. M. Myers,* for plaintiffs in error, citing: *Baker v. Nichols Shepard Co.* (Okla.) 65 Pac. 102; *Aultman-Taylor Co. v. Frazier* (Kan.) 47 Pac. 157; *Harrison et al. v. Russell & Co.* (Idaho) 87 Pac. 784; *Avery Planter Co. v. Risg,* 56 Ill. App. 599; *Huber Mfg. Co. v. Busey,* 16 Ind. App. 410; *Briggs v. M. Rumely Co.,* 96 Iowa, 202; *Lindsey v. Frische* (Wis.) 109 N. W. 945.

*John L. Priddy, J. L. Hamon,* and *Charles Mitschrich,* for defendant in error, citing: *Aultman-Taylor Co. v. Gunderson* (S. Dak.) 55 Am. St. Rep. 837; *Scott v. Geiser Mfg. Co.,* (Kan.) 80 Pac. 955; *E. T. Burrows Co. v. Rapid Safety Filter Co.,* 97 N. Y. Supp. 1048; *Main Co. v. Griffin Bynum Co.* (N. C.) 53 S. E. 727; *Northern, etc., Co. v. Coal Co.,* 116 Wis. 130; *Davis v. Case T. M. Co.* (Ky.) 80 S. W. 1145; *Murphy v. Russell* (Idaho) 67 Pac. 421; *Baird Bros. v. Walter Pratt & Co.* (Ind. T.) 89 S. W. 648; *Furneaux v. Esterly* (Kan.) 13 Pac. 824;

*Case T. M. Co. v. Ebbinghausen,* 11 N. D. 466; *Massillon E. & T. Co. v. Schirmer* (Iowa) 93 N. W. 599; *Pa. I. W. Co. v. Hygian, etc., Co.* (Mass.) 70 N. E. 427; *Shearer v. Garr, etc., Co.* (Tex. Civ. App.) 90 S. W. 684; *Acme Harvester Co. v. Ernc* (Kan.) 66 Pac. 1004; *International Harvester Co. v. Dillon* (Ga.) 55 S. E. 1034.

WILLIAMS, J. (after stating the facts as above). The question involved in this case is as to whether or not the plaintiffs in error are in a position under this record to avail themselves of the condition of warranty.

There is no dispute that the plaintiffs in error did not give the written notice to the defendant in error at its home office at Findlay, Ohio, by registered letter, or any written notice to the local or general agent through whom the machine was received (for it was not received through any local or general agent), stating particularly what parts were defective and wherein the warranty failed. But the question arises as to whether or not the actual notice that was brought to Schon, the admitted agent of the defendant in error, relieves the plaintiffs in error in that respect, and permits them to avail themselves of the conditions of warranty. The agent, Schon, in his deposition admits that, acting for the defendant in error under its instructions he went to Lawton to set up the machine, and operated it about two weeks. He testified that he was "experting" (meaning setting up and supervising and installing the machinery as agent), and that he was authorized by the defendant in error to accept notice of defects or breakages, and also was authorized by the company that, if he saw defects, to make the same right, but he stated that, after he had "experted" the same and gotten away from there, he was not authorized to receive notices. According to the evidence offered on the part of the plaintiffs in error, he had actual knowledge that the machinery did not comply with the contract; that the defendant Hale stated that he would send the notice required by the conditions of the contract of warranty to the home office, and Schon said that it

was not necessary; that he was agent for the company; and that notice to him was sufficient. He was there authorized to make settlement, to collect money, and to receive notice of defects, which could mean nothing more than the failure of the machinery to comply with the warranty.

In the case of *Harrison et al. v. Russell & Co.*, 12 Idaho 625, 87, Pac. 785, the court, in construing a warranty clause substantially the same as that involved in this case, said:

"The only purpose of notice is to enable the vendor to examine the machinery and remedy any defects and put it in running order. When that purpose has been served, and the company's agents have taken charge of and examined and worked on the machinery, it becomes immaterial whether any notice at all has been given. *Mass. Loan & Trust Co. v. Welch*, 47 Minn. 183, 49 N. W. 740; *Davis v. Robinson*, 67 Iowa, 355, 25 N. W. 282; *Nichols & Shepard Co. v. Wiedemann*, 72 Minn. 344, 75 N. W 208; *Aultman-Talyor Co. v. Frazier*, 5 Kan. App. 202, 47 Pac. 156; *Baker v. Nichols & Shepard Co.*, 10 Okla. 685, 65 Pac. 100."

In this case, not only the expert mechanic, but also the general agent of the defendant in error, authorized to accept notice of defects, which would amount to failures of warranty, and to make allowances and deductions and collect money, was present and set up the machine, ran it and operated it for 14 days, and received notice from the plaintiffs in error of the defects, and that they stood on their warranty, he at the same time acting in such a way that they not only considered him as the general agent, but also treated him as such agent for the company; for, when he leaves within three or four days, they notify him of the failure of the ditcher to work according to his own testimony, and he advises them that he can come back only under the instructions of the defendant in error. At the same time the defendant in error was notified by the plaintiffs in error, and in January, under its instructions, Schon returns to repair the machine, and in March we find him back there again. Whilst he did not return that time under instructions from the company for this particular

Vol. 24—3

work, he was still in its employ, and helped on the machine, which was then out of repair.

The case of *Champion Machine Company v. Lawson Mann,* 42 Kan. 372, 22 Pac. 417, appears to be in point. The warranty clause in that instance required that notice must be given to the machine company at its home office in Springfield, Ohio, the machine to be subject to a second trial in their presence and under their direction, and, if the failure was not found to have arisen from any defect in the machine when properly adjusted and used, the machine would be considered as filling the warranty and be kept by the purchaser, but, if upon second trial said machine does not work properly, it might be returned and the payments would be refunded. J. P. Quigley, the manager of the Western branch office of the Champion Machine Company, and a man in his employ, went to the farm of Mann and set up the machine, and a day or two thereafter the vendee executed two notes to the company and delivered them to Quigley. The court instructed the jury:

"It was also provided in the contract of warranty that, if the machine did not perform properly, then immediate notice should be given to the Champion Machine Company, Springfield, Ohio, subject to a second trial in their presence and under their direction. When, if the failure should be found not to have arisen from any defect in the machine when properly adjusted and used, and the machine filled the warranty, then it should be kept by the purchasers. If, however, you find that the machine was set up and operated under the directions of J. P. Quigley, the general agent and manager of the defendant's branch house in St. Joseph, and the workmen whom he sent, and that the same failed to do good work, or was defective as charged in the petition of the plaintiffs, and that the said J. P Quigley and his workmen knew of such failure, and the plaintiffs expressed dissatisfaction with the machine, and that said J. P. Quigley and his workmen continued to direct the operation of the machine until its use was abandoned by the plaintiffs, this would be sufficient notice to the defendant of the plaintiffs' claim that the machine did not comply with the terms of said warranty."

This instruction was approved in the case of *Baker v. Nichols & Shepard Co.,* 10 Okla. 690, 65 Pac. 102, the court said:

"Even if it had appeared to the jury that the written notice required by the warranty had not been strictly complied with, they should yet have found for the defendant, if they were satisfied upon the evidence, as it was adduced to them, that the plaintiff company had thus taken charge of the machine for the purpose of repairing and trying to put it in order. These acts dispense with that provision of the warranty which requires written notice of the failure of the machine to work in a satisfactory manner. It is provided in the warranty that: 'No general or special agent or local dealer is authorized to make any change in this warranty. Workmen or experts are not agents, and have no authority to bind the company by any contract or statement.' Such provisions as this are uniformly considered to be limitations upon the capacity of the corporation for further action which it cannot impose upon itself, and that such provisions cannot operate to prevent waiver by the corporation of the conditions of the contract which would, except for the prohibition, legally result from acts of its authorized agents with reference to the machinery. * * * In response to the notification of the defendant, the plaintiff took charge of the machine by these various agents and workmen, and attempted to put it in order. The attempt was subsequently and frequently repeated by persons representing the plaintiff from time to time. If the conditions of the printed warranty were binding upon the plaintiff, they were, at any rate, waived and thus fulfilled. * * * But we see no reason why the defense in this case should be put upon narrow grounds. The warranty in this case was mutual. It was signed by the defendant, but it was accepted by the plaintiff, and it was binding upon both, and it contained the warranty and agreement on behalf of the plaintiff that the 'said machinery is well made, of good materials, and, with proper management, capable of doing well the work for which the machines respectively are made and sold,' as well as the condition, 'that, if in five days from its first use it shall fail to fill this warranty, written notice shall be immediately given by the purchaser to Nichols & Shepard Company, at Battle Creek, Mich., stating particularly what parts and wherein it fails to fill the warranty.' The contract was mutual. The plaintiff was bound to remedy the defect, and, if possible, to make the machinery a practical success. It failed to do so. A number of experts working

in behalf of the company through a series of days, extending over almost the whole of a month, endeavored by repairing to get the machine into some kind of working shape. The evidence shows that their efforts were a failure, and the defendants ought to have been released from any liability. *Aultman-Taylor Co. v. Frazier*, 5 Kan. App. 202, 47 Pac. 157."

The contract provides:

"Ditcher to be constructed and warranted in compliance with letter of August 27th to J. O. Severns of Guthrie, Oklahoma Territory, and letter of John R. Hale of Lawton, Oklahoma Territory, of September 7th, 1904. Final settlement to be made on acceptance of machine."

Immediately thereafter we find the following provisions of warranty:

"The machinery furnished under the above order shall be made of good material, well constructed, and with proper use and management will do more and better work than any machine of its class. If inside of six days from the day of its first use it shall fail in any respect to fill this warranty, written notice shall be given immediately by the purchaser to the Van Buren, Heck & Marvin Co., at its home office, Findlay, Ohio, by registered letter, and written notice also to the local or general agent through whom the same was received, stating particularly what parts and wherein it fails to fill the warranty, and a reasonable time allowed the company to get to the machine with skilled workmen and remedy the defects, if any there be," etc.

In this case there was more than the usual warranty. In the letter of August 27, 1904, the machine is specifically described to have 75-inch traction wheels with heavy steel gear rims riveted to the inside of the tires, tires to be ¾ inches thick, 24 inches wide, boiler to be of the Scotch-Marine type 60 inches by 104 inches, engines to be duplex slide valve 8¼ inches by 8-inch cylinders, crank shaft to be a steel forging, differential pinion and gear to be steel, machine to be equipped with No. 124 chain throughout, excepting on the feed, which will be either No. 88 or No. 103, excavating wheel to be constructed with heavy steel bucket tops, each armed with rooters, made entirely from tool steel, machine to have coal bunker and water tank beneath the

engine, elevator to be driven with steel bevel gearing, gear segments and sprockets which drive excavating wheel to be steel castings, machine guaranteed to cut 60 lineal feet of trench per hour in ordinary earth at the depth of 12 feet, machine to have low speed, 9 inches per minute, high speed of 8 feet per minute with engines running at their regular speed, excavating frame to be constructed of steel, as will also the standards connecting the excavating frame with the machine. Machine to be heavily and thoroughly braced throughout and to be first class in every respect, ground wheels to be constructed with removal and cleats, also front lugs, tiller wheels to be constructed with removable holding tire for the purpose of moving over asphalt pavement, machine to be a strong and powerful puller so that it can be used as a road locomotive when required.

The representations of the letter of September 7, 1904, are in part as follows:

"You want a 12' machine. We have one that has put in about a thousand feet of extremely hard material. In fact, there was no earth at all. It was all shale, most of which could be picked, interspersed, however, with flinty ledges which were impossible to excavate except by blasting, that is, with the ordinary method. The machine went thru it. The machine was worn somewhat. We are replacing all worn parts and will have the machine in readiness for shipment in about two weeks. Equipment as follows: Boiler is horizontal, Scotch-Marine type 66" in diameter 9' 7" depth, furnace 34" in diameter, shell ⅜", heads ½", furnace ½", tubes 68-3", length 96", boiler is equipped with a dry pipe instead of dome to allow for the stack being topped backward and passing under trolley wires. Engine- is duplex, 8¾"x10" cylinders, coupled with forged steel crank shafts 4" in diameter; tiller wheels 54" in diameter, 24" tire with removable center rings; traction wheels 75" in diameter, 24" in width, rear axle 6" in diameter. Excavating wheel is equipped with a heavy steel top and rooters similar to the 24" machine described. This wheel cuts to an actual width of 30" and to a depth a little in excess of 12 feet, it being our 28" wheel. This machine is built to carry a larger wheel so that when necessary any size larger wheel up to 54" can be purchased for this machine. The machine,

of course, is equipped with a more powerful traction than is our 24″ of the same type, it being a much heavier machine is capable of pulling a much heavier load, when used as a road locomotive. All worn parts having been replaced on this machine, it is guaranteed in every way same as a new machine. * * *· Machine in ordinary earth and at a depth you describe should open up an average of 1200 feet a day. * * * The machine is built for hard and continuous service and is first-class in every particular. * * *″

From the letters of August 27th to J. O. Severns, and September 7th to John R. Hale, we get the exact description of the machine to be furnished, and the specific work for which it may be used. In the first excerpt of the contract it is so warranted. In the latter warranty clause it is provided that the "machinery furnished under the above order shall be made of good material, well constructed, and with proper use and management will do more and better work than any machine of its class." This contract shows upon its face that there was more than the ordinary warranty contemplated. The plaintiffs in error desired this machine within a definite time for a definite purpose, and that it should be of a character to do a specific work, as set out in the letters of August 27th and September 7th, and there is a specific warranty that it will so comply.

The general warranty clause being contained for the protection of the vendee, and the provision for notice for vendor, that it might have a reasonable opportunity to make examination, it appears that without any request or notice on the part of the vendee the defendant in error, the vendor, on its own motion had a specially authorized and experienced agent who was an expert on the ground to set up and superintend the operation of this machinery. And, when he was there to make inspection, authorized to receive notice of defects, it would be an unreasonable rule laid down here to prevent the plaintiffs in error from availing themselves of the consideration of warranty that they were careful to secure, realizing the character of work that they were going to do and the machine that was needed, if we should construe this

contract so as to cause them to forfeit, or not be able to avail themselves of, the conditions of warranty, when the defendant in error, through its agent, examined and operated the machine twice under general directions of the company, and examining the machine the third time whilst acting as its agent. When, under these facts, we hold that the plaintiffs in error may avail themselves of the warranty, that will not necessarily conclude the defendant in error, unless the facts upon the trial before the court or jury show that it was not the character of machine as warranted; and, if in fact it was not, the ends of justice are thereby subserved. If it was the character of machine as warranted, and same was unsatisfactory on account of careless and unskilled operators, the plaintiffs in error are the victims of themselves, and should not be relieved by penalizing the defendant in error.

In this case it appears that Schon traveled under the direction of the defendant in error; that he was present and saw the machine, and, if he found any defects, he had authority to remedy the same, or, if he was notified of any defects, it was his duty to remedy them. He had authority to make settlements, to make deduction, and to receive payments. As stated in the Idaho case, the object of notice is to permit the company to have an opportunity to make investigation, and to make repairs and determine for itself whether or not the machine complied with the warranty. In this case the vendor was specifically advised as to the kind of ditcher desired, and for what purpose it was to be used, and the vendor specially undertook that it should be such a ditcher. The stipulations for notice are not to be presumed to have been inserted in such a manner and with a view of releasing the vendor from its undertakings, but that the machine should be tested in apt time, and, if there was any contention or intimation on the part of the vendee that the ditcher did not fill the terms of the warranty, that the vendor might have notice thereof, and by its own specially selected experts careful examination might be made so as to repair and make good the ditcher, if reasonably practicable, or of determining whether or not the contention on the part

of the vendee that the ditcher did not fill the terms of the warranty was well founded and in good faith. In this instance, the specially constituted and authorized agent, and, also equipped expert is there within the specified time, examining the ditcher and machinery, and operating it, and within the prescribed time he ascertains the defects, and the statement is made to him that the plaintiffs in error would give the written notice as prescribed in the contract, and such agent said: "No; it is not necessary. I am here representing the company. The actual notice to me is sufficient." And, when he leaves, notice is sent to him immediately after the machine again fails to do the work and appears defective. He replies: "I cannot return except under instructions from the vendor." The vendor at that time is also notified, and there is no intimation from it that the vendee by not having given notice in apt time, as specially prescribed in the written contract, has waived his right under the terms of warranty; the vendor sending the same expert back. It appears to us that the vendor ought not to be permitted to say now that vendee cannot avail himself of the provisions of the contract of warranty. The rule is well stated that where notice is given to the local agent, not in the manner as prescribed in the conditions of warranty, no notice at all being given to the principal, but it sending an expert after such notice to the local agent to examine the machinery, constitutes a waiver; the purpose of the notice and of the contract being that the vendee shall have the machinery of the character that he contracts for, and that the vendee shall have an opportunity to make its inspection thereof in a certain time, if it appears to be defective, and, when that is accomplished, the purpose of the conditions of the contract in favor of the vendor has been carried out. *Dean v. Nichols & Shepard Co.*, 95 Iowa, 89, 63 N. W. 582. In this instance we think that the defendant in error is not in an attitude to be permitted to say that the plaintiffs in error should not be permitted to offer evidence as to whether or not the machinery complied with the warranty. For the purpose of this case, we have assumed the proof hypothetically

as offered by the plaintiffs in error. Upon the trial of the case, upon the issues joined, the proof may appear different.

The judgment of the lower court is reversed, with instructions to grant a new trial and proceed in accordance with this opinion.

Dunn, Hayes, and Turner, JJ., concur; Kane, C. J., dissents.