REEVES & COMPANY, Appellant, v. BLOCK, et al., Respondents.

(139 N. W. 780.)

1. **Sale—Warranty—Notice of Defects—Time.**

Where a warranty of a threshing machine provided that failure to return the machine to place of delivery within six days from day of its first use should be conclusive of·fulfillment of warranty and of purchaser's satisfaction, he agreeing to make no claim thereafter against seller, and that seller's liability under the warranty beyond expiration of the six days should not be extended if, at any time after the six days seller should furnish improvements or attachments, or should purchaser notify seller of any defects, and seller should thereupon remedy them; held, the purchasers were entitled to all of the six days in which to discover defects, and were not required to give notice of defects, nor to haul machine to place where delivered to them, within that time.

2. **Notice to Agent of Defects—Waiver of Notice.**

Knowledge of local agent of vendor of a threshing machine, of defects therein, and his action in getting an expert to repair it, constituted a waiver of notice to such agent, required by the contract.

3. **Limitations—Counterclaim—Running of Statute—Nonresident Corporation.**

Code Civ. Proc., Sec. 69, operates to prevent running of statute of limitations against a non-resident corporation until it is brought within reach of process of state courts; following McConnell v. Spicker, 15 S. D. 98, 87 N. W. 574.

4. **Sale—Divisible Contract—Separate Articles Priced.**

Where, under a contract of sale of machinery, the price at which each article was sold was specified, such contract was divisible.

5. **Rescission of Divisible Contract—Burden of Proof.**

Respondents having pleaded rescission of a divisible contract of sale of threshing machinery as a defense to notes given for purchase price, the burden of proof was on them to prove that each of the several articles purchased was defective.

6. **Sufficiency of Proofs of Defects—Question for Jury.**

In a suit on notes given for purchase money for threshing machine, where purchaser counterclaimed for value of property given in payment of that purchased, held, the evidence sustains finding that all articles of the machinery sold were defective. Held, further, that the trial court was justified in submitting to jury question whether the machinery, as a whole, did good work.

(Opinion filed February 10, 1913.)

Appeal from Circuit Court, Day County. Hon. FRANK McNULTY, Judge.

Action by Reeves & Company against John J. Block and another upon notes given in part payment for threshing machinery purchased under a warranty, by defendants of plaintiff. Plaintiff counterclaimed for value of property given in part payment under the purchase. From a judgment for defendants and an order denying a new trial, plaintiff appeals. Affirmed.

*Anderson & Waddell,* for Appellant.

It is true that the mailing of a letter properly addressed and with postage prepaid raises the presumption that in due course it was received by the addressee, but it is equally true that an absolute denial that the letter was received by the addressee rebuts the presumption and leaves the proposition unproven. Therefore, we contend that there is no proof in the record that any notice either actual or constructive in compliance with the warranty or at all was given to appellant, but aside from this the record undisputably shows that, assuming that this mailing of a letter constituted notice, that it was in point of time in no wise in compliance with the terms of the warranty, being as the undisputed evidence shows at least twelve days instead of six days after the day first used. This cannot be possibly said to be cured by any waiver on the part of appellant, as there is nothing to show that anyone representing or having any authority to represent appellant ever went near respondents or entered into any negotiations with them.

The contract of purchase is a divisible contract for the purchase of several separate and distinct machines. An examination of Exhibit A itself clearly shows that the separator, the weigher, the stacker, the band cutter and feeder were regarded as separate and distinct machines. Outside of any evidence in the record it is a matter of common knowledge that the weigher and stacker, a band cutter and feeder and a belt can be attached to any kind of a separator. This very question of the divisibility of this kind of a contract has been before the courts of several of our sister states. Westerbrook v. Reeves & Co., Iowa, 111 N. W., 11; Pitt v. Spitznogle, 54 Iowa, 362; 6 N. W. 71; Davis v. Robinson, 67 Iowa, 362; 25 N. W., 280; Nichols v. Wyman, 71 Iowa, 160; 32 N. W. 258; Russel vs. Murdoch, 79 Iowa, 101; 44 N. W. 237; 18 Am. St. Rep. 348.

There is not one syllable of evidence in the record showing or tending to show that the bandcutter and feeder, the weigher, the stacker or the belt did not fulfill the terms of the warranty.

The evidence in the record stands undisputed that the answer containing the counterclaim was not served until October 14, 1908, hence clearly more than six years subsequent to the accrual of the cause of action set up in the counterclaim. (See record page 186.)

It appears that the appellant by its offer in evidence of exhibit "6" consisting of the summons and complaint in this case together with the sheriff's return attached thereto showing that the same were served upon the respondents on the 23rd day of September, 1908, clearly attempted to prove by competent evidence that more than six years had elapsed since the accrual of the counterclaim prior to the commencement of this action. This offered evidence on the part of the appellants was by the court excluded, an exception to such ruling duly taken. (See record page 185.)

The authorities are not entirely in harmony upon the question as to when a claim interposed as a set off or counterclaim becomes barred by the statute of limitations. In some states it has been held that the time material for consideration is the time when the answer containing the counterclaim is served and that if prior to that time the period has run that then and in that case the statute is a bar. See Dist of Columbia, Durant v. Murdock, 3 App. Cas., 114; Kansas, Toby v. Allen, 3 Kan., 399; Pennsylvania, Gilmore v. Reed, 76 Pa. St. 462; McClure v. McClure, 1 Grant, 222; Wisecarver v. Kincaid, 83 Pa. St., 100; South Carolina, Holly v. Rabb, 12 Rich. 185; Virginia, Trimyer v. Pollard, 5 Gratt. 460; West Virginia, Rowan v. Chenoweath, 49 West Virginia, 287; 38 S. E. 544; 87 Am. St. Rep., 796; 33 Cent. Dig., Limitation of Actions par. 552; California, Perkins v. West Coast Lumber Co., 48 Pac., 982; 25 Cyc., 1312.; Anderson v. Mayer, 50 Cal., 525; Atkinson v. Canal Company, 53 Cal. 102.

But irrespective of the question as to whether or not the commencement of this action by appellant stopped the running of the statute of limitations against the counterclaim of respondents, we say that the offer by appellant of exhibit "6" conclusively shows that more than six years had elapsed since the accrual of the counterplain to the commencement of the action. (See record pages 185-249-250-258)

*H. H. Potter,* for Respondents.

As to appellant's first contention, that the evidence does not show the notice to have been given within six days from the first use of the machine, it is wholly immaterial whether or not such notice was given. There is no provision in the contract requiring notice to be given within six days from the first use of the machine. Defendant was entitled to the whole of the six days in which to test the machine.

A careful reading of the contract will show that the six day limitation has no application to the time of giving notice.

If we assume that the contract is a contract for the sale of several distinct and separate machines, or parts of a machine, yet it is apparent that the several parts were to be operated together as an entirety, and that such was necessarily the understanding of both parties to the sale. In its operation, all parts must of a necessity cooperate in producing the general result of threshing grain. In case of a general defective result following the operation of the machinery, as an entirety, we think the burden of assigning the cause of failure, to some particular part of the machine, was on the plaintiff.

The defendant in his evidence did not undertake to do so. It is certainly enough that under such circumstances the defendant proves a general incapacity and unfitness, and failure of the machine to work.

There is in the whole record no evidence to show that the inefficiency of the machine, and its failure to work was or could be traced to any particular one of the various component parts of the machine.

Under these conditions as disclosed by the record, the rule as to the divisibility of a contract can have no application. A careful examination of the cases in which this rule has been applied will disclose that under the undisputed evidence or admitted facts, of these cases the defect was confined to a specific part of the property sold.

As to appellant's sixth contention, that the counterclaim was barred by limitation, it is only necessary to refer to the statute to show that a non-resident of the state cannot avail himself of the statute of limitations, as against a resident of the state. Section 69, C. C. Pro.

The machine was delivered to defendant at Webster, S. D., and the whole transaction was perfected without any intervention of any local agent; therefore no notice to any local agent was required.

The term, "local agent," unquestionably means the plaintiff's agent at the place of the making of the contract, and the delivery of the machine; in this case there was none.

The verdict is conclusive against the plaintiff on all questions of fact, and the evidence was sufficient to sustain it.

GATES, J. Appellant, a nonresident corporation, sold to respondents a threshing machine outfit, consisting of a separator, stacker, band cutter and feeder, weigher with cross conveyor and some rubber belt. The several items were priced in the written order as follows: Separator, $580; stacker, $250; band cutter and feeder, $210; weigher and conveyor, $75; belt, $82—making a total of $1,197. As part of the purchase price appellant accepted an old separator at $182, and there was a reduction in the agent's commission of $105, leaving a balance due on the contract of $910. For this sum appellant took respondents' promissory notes as follows: For wind stacker, $125, due October 1, 1902, and $125, due October 1, 1903; for separator, feeder, weigher, and belt, $330, due November 1, 1902, and 3330, due November 1, 1903. These notes were secured by a chattel mortgage on the newly purchased outfit. The sale was made at Webster, S. D., by A. W. Carl, a traveling agent of appellant, and delivery was made at Webster, August 16, 1902, by one Huwey, appellant's agent at Bristol. Huwey got the old separator as his commission on this sale and for another transaction for appellant. The following warranty was a part of the order:

"The machinery ordered herewith is warranted by Reeves & Co. to be made of good material and built in a workmanlike manner, and if operated in compliance with our printed instructions and otherwise properly handled to do good work, but if inside of six days from the day of its first use the said machinery fails to fill said warranty, written notice shall be given Reeves & Co. by registered letter, and also written notice to the local agent from whom the same was purchased, stating wherein it fails to fill the warranty, and if it be of such a nature that remedy cannot be suggested by letter a reasonable time shall be allowed to get to the

machinery to remedy the defects, if any there be, and an opportunity offered for a trial thereafter, the purchaser rendering necessary and friendly assistance.    Defects or failures in one part shall not condemn any other part or attached machine, and if, after a fair opportunity to remedy a defect, the part or parts containing such cannot be made to fill the warranty, that part which fails shall be returned immediately by the purchaser to the place where it was received, with the option in the company either to furnish another machine or part in place of the machine or part so returned, or, credit the settlement with same.    If Reeves & Co. shall furnish another machine or part in place of the one returned, the terms of this warranty shall be held to have been fulfilled and the company shall be subject to no further liability under this order.    It is hereby expressly agreed that all claims for damages against Reeves & Co., by reason of the nonperformance of machinery above, are hereby waived.    It is mutually agreed that the failure to return said machine or part to the place whence it was received within the said six days from the day of its first use shall be conclusive evidence of the fulfillment of the warranty and full satisfaction of the purchaser, who agrees to make no claim thereafter against Reeves & Co. or to make any defense to the notes given therefor on account of any breach of the warranty.    It is also expressly agreed that if at any time after the expiration of the six days from the day of its first use Reeves & Co. should furnish to the purchaser any improvements or attachments for said machinery, or replace any old parts with new, or should the purchaser notify Reeves & Co., in any wise whatever, of any imperfections in said machinery, and if upon receipt of such notice Reeves & Co. or any agent or employe should act thereon and remedy, or attempt to remedy, such imperfections, doing of all such acts will not extend the liability of Reeves & Co. under this warranty beyond the expiration of the six days from the day of the first use.    It is further agreed that if the machinery, or any part thereof, is delivered to the purchaser before settlement is made for the same as herein agreed, or any alteration, erasure or waiver is made in the warranty, or in this special understanding or agreement, the purchaser waives all claims under the same. It is also agreed and understood that no agent or employe of

Reeves & Co. (officers of the company not included) is authorized to alter, change, modify or waive this warranty, or any part thereof, or to make any other or different warranty; or that any notice to any agent or employe of Reeves & Co., or any act at any time of any agent or employe, shall not constitute a waiver of the written notices herein provided for, nor a waiver of any other stipulation of this warranty."

The machinery was first used on August 18, 19102. Mr. Huwey was present at the setting up of the machinery. He found that some of the sieves were missing. Defendant Block took Huwey's team and went after the sieves. Huwey ran the machine, but could not make it do good work. He was a man of experience with threshing rigs. Grain would go in with the straw in too large quantities. Dirt and chaff would go into the half bushel. The machinery would get clogged. The next day Huwey procured the services of his brother, who was an expert. The latter could not make the machinery do good work. He tried everything he could think of as an expert to make it work. The evidence fairly shows that neither Huwey, the agent, nor his brother, the expert, could tell what was wrong with the machinery. The evidence tends to show that something was wrong with the separator, the weigher, and the feeder at the very least. Trial was made first on wheat, and then on oats, with like results. After the second day of use Huwey and his brother departed, and nothing was done by them or by appellant to remedy the defects. On August 30, 1902, respondent Block sent the following letter to appellant by registered mail (omitting date, address, and signature): "This is to notify you that the separator of your make, that I bought of your agent, A. W. Carl, and which was delivered by your agent, Mr. Huwey, of Bristol, S. D., has proved to be worthless; that is to say, neither your agent nor myself can make the same do good work. After repeated trials, he has given it up and left it on my hands. I wish you to return to me my notes and machine that I traded in for your separator, and take your machine back. Trusting that you will do so at once, I beg to remain."

This letter appellant claims not to have received, but because of the verdict we must consider that it did. Soon thereafter respondents brought all of the machinery to Webster and re-

turned it to the place where they received it. In December, 1902, appellant took possession of the property and foreclosed the chattel mortgage by advertisement, giving respondents credit on the first $330 note in the sum of $184.85.

On September 23, 1908, appellant brought the present action on said notes. Respondents defended by setting up facts showing a breach of warranty on the part of appellant and a rescission of the contract by respondents, and did, by way of counterclaim, ask for damages for the value of the old separator, which was turned in as a part of the purchase price, and for the amount paid for freight on the machinery bought by them. The jury found all of the issues for the respondents, and awarded them $403.78.

The questions raised by appellant may be consolidated into three: (1) Were respondents required, under the terms of the warranty, to give notice of the defects and to return the property within six days after first use? (2) Were the items of respondents' counterclaim barred by the statute of limitations? (3) Was the contract a divisible one, and, if so, did the respondents prove sufficient facts to justify the rescission of the entire contract?

[1, 2] As to appellant's first claim, the terms of the warranty are inconsistent. If respondents were entitled to six days' use, they could not be required to give notice of defects within six days, nor to haul the machinery back over the 20 miles distance within the six days. It seems to us that by a fair interpretation of the terms of the warranty the respondents were entitled to all of the six days after first use within which to discover defects. J. I. Case T. M. Co. v. Gidley, 28 S. D. 101, 132 N. W. 712. The knowledge of the agent, Huwey, and his action in getting an expert constituted a waiver of any notice to the local agent. Huwey was the local agent, if there was one. Respondents promptly thereafter notified appellant of the defects, and promptly returned the machinery to the place from which they received it. As is statd in N. W. Thresher Co. v. Mehlhoff, 23 S. D. 476, 122 N. W. 428, the appellant could then have elected to return the notes, or to replace the defective machinery with others. It did neither; nor did it ever make any attempt to remedy the defects. We think respondents sufficiently complied with the requirements of the contract as to giving notice.

[3] It must be held that the cause of action arising upon

respondents' counterclaim was not barred by the statute of limitations. Section 69, Code C. P.; McConnell v. Spickler, 15 S. D. 98, 87 N. W. 574; 25 Cyc. 1239.

[4] The contract was divisible, because the price at which each separate article was sold was specified. N. W. Thresher Co. v. Mehlhoff, 23 S. D. 476, 122 N. W. 428; 35 Cyc. 116; Nichols & Shepherd Co. v. Wiedemann, 72 Minn. 344, 75 N. W. 208, 76 N. W. 41; Westbrook v. Reeves, 133 Iowa, 655, 111 N. W. 11.

[5, 6] Respondents having pleaded a rescission of a divisible contract as a defense to the action on the notes, the burden was upon them to prove that each of the several articles purchased was defective. 35 Cyc. 457. This proof consisted of evidence tending to show that there was something wrong with the separator, with the feeder, and with the weigher; that neither the respondents nor appellant's agent, Huwey, nor his brother, the expert, could tell where the defects were; that the machinery, as a whole would not and did not do good work; that it became clogged; that too much grain went into the straw; that dirt and chaff went into the half bushel; that on the second day's trial, in five hours' work, they only threshed 25 or 30 bushels of oats; that all of the rest of the oats went into the straw. It would seem that the cause of such a condition was due, at least partially, to too strong a draft of wind, whether in the separator or in the wind stacker, or both, does not expressly appear. We think the evidence offered was sufficient to overcome the burden of proof as to all of the several parts. Surely, if the appellant's agent and the expert, with their expert knowledge ,were unable to say, upon a test of the machinery, where the fault or faults lay, the respondents, with their lack of expert knowledge, could not be expected to do so. It seems to us that respondents have furnished all of the evidence which they or any one else were, under the circumstance of the case, capable of furnishing to the effect that all of the machinery was defective. At least, they made a prima facie case in that regard. It was then incumbent upon appellant to show, if it could, that the stacker, or any other of the separate items purchased, was not defective. This it did not attempt to do. The only evidence offered by appellant on this point tended to show that the grain was damp, and that the engine was of insufficient power; but both of these claims were disputed by respondents' witnesses. We

believe that, under the circumstance of this case, the trial court was justified in submitting to the jury the question as to whether the machinery, as a whole, did do good work.

The judgment and order denying a new trial are affirmed.

